## James Hartness Howard v. Ann Spafford

[321 A.2d 74]

No. 116-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 4, 1974

*Downs, Rachlin & Martin*, St. Johnsbury, for James Hartness Howard.

*Webber & Costello*, Rutland, for Ann Spafford.

**Larrow, J.** This action originated as a civil action in which the original plaintiff, Dorothy Spafford, sued the original defendant Howard, now the third-party plaintiff, for personal injuries sustained in a two-car collision. Howard, the driver of one of the cars, brought his third-party action against Ann Spafford, the driver of the other car, seeking indemnity or contribution for her negligence as a joint tortfeasor. The trial court severed the third-party action and, after the original action was settled, dismissed the third-party complaint for failure to state a cause of action. The third-party plaintiff appeals.

Although many ramifications follow from the issue presented, the question may be simply stated. The appellant would have us rescind our long-standing rule against contribution between joint tortfeasors to permit contribution between negligent tortfeasors in proportion to their relative fault.

Appellant does not seriously question that the present law of Vermont precludes contribution among joint tortfeasors, intentional or negligent. The doctrine is rooted in two cases, *Spalding* v. *Oakes*, 42 Vt. 343 (1869), and *Atkins* v. *Johnson*, 43 Vt. 78, 5 Am.R. 260 (1870). *Atkins* is distinguishable in that it involves an intentional tort, libel. *Spalding* is more closely in point, as it involved neglect to perform a legal duty. But, in any event, the two cases clearly adopted the settled law of many other jurisdictions at the time, and the rule has remained unchallenged in this jurisdiction to the present.

We are urged, however, that a relaxation of the rule is indicated by practical and theoretical considerations. The prevalence of automobile liability insurance is urged as the practical reason, and our comparative negligence statute (12 V.S.A. § 1036) as the theoretical reason. We find neither reason compelling enough to substitute judicial fiat for legislative action.

It is of course true that most vehicles and their operators are covered by liability insurance. It is equally true, however, that all activities of a potential defendant are not so widely insured. Negligence has many forms distinct from automobile operation. We have never regarded the negligence of an automobile operator as essentially different from any other negligence, apart from our unsatisfactory experience with the statutory gross negligence test for liability to guest passengers, and any rule we might enunciate should, in logic, apply to all negligent torts. If insurers generally feel that logic or justice require some procedure for apportioning liability among themselves in proportion to fault, they should have little difficulty in securing appropriate legislation applicable to themselves, and even less in accomplishing the result by inter-company agreement.

The rule presently obtaining in this state is still the majority view. *Cf.* Annot., 60 A.L.R.2d 1366 (1958), and cases there cited. This alone does not require the rule's retention. But an additional reason for hesitation to change can be found in the history of the Uniform Contribution Among Tortfeasors Act. It was promulgated by the Commissioners on Uniform Laws in 1939, but has been adopted in only nine jurisdictions, two of which modified or eliminated the procedure provided therein for joinder of third parties. One state

amended it to limit its application to joint judgment defendants. And so much opposition developed to the Act that the Commissioners have withdrawn it for further study and possible redrafting. *Cf.* A.T.L. Monograph Series, Comparative Negligence, at 72. This is at least a warning that contribution among joint tortfeasors introduces problems of its own. Combining such contribution with comparative negligence, particularly where there are multiple defendants, may well create a system which, however logical in theory, can be administered only by a trained judge, and not by a jury. The number and complexity of issues created, coupled with the prospect of the instructions which must be given, under pressure of time, to a jury before it retires, gives rise to a spectre of trials replete with reversible error. And severance, while it might reduce the pressure, would not decrease the issues; it would increase the number of trials.

Strengthening our general view that the subject matter here involved is more appropriate for legislative than judicial consideration is the statistic that twenty-one jurisdictions have created a right of contribution by statute, and six by judicial decision. The statutes are not uniform; some provide for equal contribution, some for proportionate. Nor do the judicial decisions indicate a uniform result. In *Dole* v. *Dow Chemical Co.*, 30 N.Y.2d 143, 282 N.E.2d 288 (1972), the New York Court of Appeals, in a 5–2 decision, left in effect a statute providing for 50–50 contribution between joint tortfeasors subjected to the same judgment, but judicially enacted proportionate contribution where the second joint tortfeasor, not originally sued, was brought into the action by third-party complaint. In *Packard* v. *Whitten*, 274 A.2d 169 (Me. 1971), a case involving multi-party defendants, the Maine court adopted proportionate contribution among joint defendants while leaving intact the law set forth in its comparative negligence statute that (unlike Vermont) each defendant is jointly and severally liable to plaintiff for the full amount of plaintiff's damages. The leading Wisconsin case, *Bielski* v. *Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962), also leaves joint and several liability intact, while changing the previous rule of equal contribution to one of proportionate contribution. The complexities which can follow upon the adoption of proportionate contribution by judicial decision are

discussed and analyzed at length in Comment, *Comparative Negligence and Comparative Contribution in Maine: The Need for Guidelines*, 24 Maine L. Rev. 243 (1972).

Appellant argues that it makes little sense for Vermont to have a "modern" comparative negligence law based on apportionment of damages according to fault, while adhering to the ancient formula of no contribution among joint tortfeasors. If change and progress were necessarily equated, this argument would be convincing. But there are almost as many types of comparative negligence statutes as there are examples. They range from the "pure" comparative negligence statute, which only reduces plaintiff's recovery in proportion to his negligence, to the "slight vs. gross" negligence statute, to the "50% bar" statute, to the Vermont-New Hampshire statutes permitting recovery in cases of equal causal negligence. *Cf.* generally, A.T.L. Monograph Series, Comparative Negligence. On a basis of logic alone, only the "pure" statute can be defended; the others are only political compromises. Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 465, 508 (1953). In the main, they have evolved from the legislative, rather than the judicial process. In our view, modifications of the Vermont statute, which so evolved, such as proportionate contribution among joint tortfeasors, should evolve in the same manner, if at all.

And, it is certainly true that the questions we are here asked to decide must have been considered by the Legislature. The Vermont statute, as written, does away with joint and several liability among joint tortfeasors held liable in a judgment. They are liable only severally, and not jointly; their liability is only in the proportion that their negligence bears to the causal negligence of the sued defendants held liable. 12 V.S.A. § 1036. What we are asked by appellant to do, in practical effect, is to modify the enacted statute in two respects. He would have us (1) take from the plaintiff his right not to impose liability upon a particular defendant, and (2) impose liability by way of contribution upon a defendant who might not otherwise be liable at all. If these are desirable results, which we seriously doubt, they should be obtained by legislative amendment rather than strained judicial interpretation.

Taking from the plaintiff his right not to sue a particular defendant could affect the strategy of his case; it could impose liability upon a person whom he does not desire to affect, for reasons of friendship, relationship, or indirect financial effect upon himself; it could also adversely affect his prospects of settlement. These factors should be weighed against the theoretical abstract justice of the proposed rule.

And, the proposed rule would impose some aspects of "pure" comparative negligence upon a statute not falling in that category. Our statute is of the "political compromise" variety; it retains contributory negligence as a bar to recovery only where it exceeds 50% of the total causal negligence. While contested cases in point have yet to reach this Court, it is construed at the trial level as barring recovery against any defendant whose negligence is less than that of the plaintiff. The rule contended for by the appellant here would, indirectly at least, repeal that legislative determination. As proposed, it would permit the exacting of contribution from a joint tortfeasor even though his negligence was less than that of the plaintiff. In a situation where plaintiff could not recover from him, under the statute, his co-tortfeasors could. This may be a socially desirable result, but if it is, it is not so readily apparent as to require judicial fiat rather than legislative action.

A further consideration for legislative action, or refusal to act, is the possible effect of the proposed rule upon potential defendants who are otherwise protected from direct liability to the plaintiff. A typical situation is the one found in *Dole* v. *Dow Chemical Co., supra,* where contribution was allowed against a third-party defendant who was plaintiff's employer, protected from direct liability to plaintiff under the applicable Workmen's Compensation Law.

The foregoing considerations merely serve to indicate the complexities surrounding adoption of the rule contended for by the appellant, however simply it may be stated. The social desirability of some of the necessary results is open to question. The difficulties of efficient administration are a factor to be weighed. The implicit overruling of legislative policy requires more motivation than is here presented. For the reasons stated, we decline to overrule *Spalding* v. *Oakes, supra.*

Appellee has urged that the settlement arrived at in the principal case below renders this appeal moot. The position we have taken on the principal issue makes a determination of this point unnecessary. In any event, the record before us does not show whether a release was given or a covenant not to sue; nor does it indicate, of course, whether rights were or were not reserved against the third-party defendant. We point out, in passing, that if the rule contended for by appellant were adopted, the mechanics and terms of settlement would become important. *Lacewell* v. *Griffin*, 214 Ark. 909, 219 S.W.2d 227 (1949) ; *Hodges* v. *U.S.F. & G. Co.*, 91 A.2d 473, 34 A.L.R.2d 1101 (D.C. Mun. Ct. App. 1952). If the settlement was such that the liability to plaintiff of the third-party defendant was not extinguished, but reserved, a right to contribution would not follow in any event.

*Judgment affirmed.*