## Tanya Swett v. Haig's, Inc., Defendant and Third-party Plaintiff v. Eric Jensen, Third-party Defendant

[663 A.2d 930]

No. 94-049

Present: Gibson, Dooley, Morse and Johnson, JJ., and St. Helaire, D.J., Specially Assigned.

Opinion Filed June 2, 1995

Motion for Reargument Denied July 5, 1995

2

*J. Norman O'Connor* and *William W. Adams* of *Donovan & O'Connor,* Adams, Massachusetts for Third-party Plaintiff-Appellant.

*Shannon A. Bertrand* of *Abell, Kenlan, Schwiebert & Hall, P.C.,* Rutland, for Third-party Defendant-Appellee.

*Bret P. Powell* and *Christopher O'Brien* of *Wilson Powell Lang & Faris,* Burlington, for Amicus Curiae Friends of Fairness in Vermont Dram Shop Law.

**Dooley, J.** The principal issue in this case is whether the Dram Shop Act permits contribution from an intoxicated driver for damages a dram shop may be required to pay a motorist injured in an accident with the intoxicated driver. The trial court held that contribution was not available. We conclude that the Act authorizes contribution, and therefore, we reverse.

Haig's, Inc., a dram shop, was sued by plaintiff Tanya Swett, a motorist who was seriously injured in an accident caused by Eric Jensen while he was operating his vehicle in Jamaica, Vermont. Plaintiff alleged that Jensen was intoxicated and that Haig's, Inc. served him liquor despite his intoxicated state. She further alleged that as a direct consequence of Haig's acts, the accident and her injuries occurred. Haig's filed a third-party complaint against Jensen, seeking contribution to any damages paid plaintiff pursuant to § 501(f) of the Dram Shop Act, 7 V.S.A. §§ 501-507, which permits contribution from "any other responsible person." Jensen sought to dismiss the complaint, arguing that he was not a responsible party under the Act and, therefore, could not be held liable indirectly under its contribution provision.

In holding that contribution was unavailable, the trial court determined that an intoxicated driver is not a responsible person under the Dram Shop Act, and reasoned that "the plain meaning of 7 V.S.A. § 501(f) allows defendant dram shops to have a right of contribution from other sellers of alcoholic beverages, but not against those to which the statute's creation of liability does not apply, such as the

4

driver." The third-party complaint was dismissed, and Haig's appealed.

Some background is necessary to put the question before us in context. Much of the law in this area has been shaped by the all-too-common circumstance of a driver, who is served alcoholic beverages by a dram shop after becoming visibly intoxicated, and who then becomes involved in an automobile accident, usually injuring another motorist. At common law, the dram shop was not liable to the injured motorist on the theory that the intoxicated driver's action was the sole proximate cause of the accident. See *Winney v. Ransom & Hastings, Inc.*, 149 Vt. 213, 215, 542 A.2d 269, 270 (1988). The dram shop was not liable even where the plaintiff showed that it was negligent by continuing to serve the driver and that the accident was caused by the driver's impairment. *Id.* Before the reevaluation of this limited view of causation, the Vermont Legislature enacted the Dram Shop Act, which imposes strict liability for injuries to third parties on dram shops that serve persons "apparently under the influence of intoxicating liquor." 7 V.S.A. § 501(a)(2);[1] see *Clymer v. Webster*, 156 Vt. 614, 619-20, 596 A.2d 905, 908-09 (1991). The Dram Shop Act preempts common-law negligence actions that come within its scope. See *Estate of Kelley v. Moguls, Inc.*, 160 Vt. 531, 532, 632 A.2d 360, 361 (1993); *Ransom & Hastings, Inc.*, 149 Vt. at 216, 542 A.2d at 270.

Because the Act's preemptive effect is limited, an accident as described above can give rise to common-law negligence liability as well as liability against the dram shop under the Act. See *Plante v. Johnson*, 152 Vt. 270, 274, 565 A.2d 1346, 1348 (1989). Thus, the injured motorist may bring a common-law negligence action against the intoxicated driver. *Id.* The Legislature recognized the intoxicated driver's liability and provided that the claim against the dram shop could be joined with the claim against the intoxicated driver. See 7 V.S.A. § 501(b). We have also held that the intoxicated driver can sue the dram shop for the driver's damages on a common-law negligence theory. See *Estate of Kelley*, 160 Vt. at 536, 632 A.2d at 363.

---

[1] Strict liability also arises in three other circumstances: (1) the person served is a minor, (2) the person is served "after legal serving hours," or (3) where "it would be reasonable to expect [that the person served] would be under the influence of intoxicating liquor as a result of the amount of liquor served." 7 V.S.A. § 501(a)(1), (3) & (4).

■ The cross-claim between the dram shop and the intoxicated driver arises from a subsection of the Dram Shop Act, which was added in 1987, and provides:

> (f) **Right of contribution.** A defendant in an action brought under this section has a right of contribution from any other responsible person or persons, which may be enforced in a separate action brought for that purpose.

7 V.S.A. § 501(f). Apart from any statute to the contrary, we have consistently held that there is no right of contribution between joint tortfeasors. See *Peters v. Mindell*, 159 Vt. 424, 427, 620 A.2d 1268, 1270 (1992); *Howard v. Spafford*, 132 Vt. 434, 435, 321 A.2d 74, 75 (1974) (adoption of comparative negligence did not abrogate no contribution rule). The parties here are joint tortfeasors; there is no question that contribution is unavailable under the common-law rule. The narrow question before us is whether § 501(f) has created a right of contribution.

The parties agree that the question must be resolved under principles of statutory construction. In construing a statute, our primary objective is to effectuate the intent of the Legislature. See *Bisson v. Ward*, 160 Vt. 343, 348, 628 A.2d 1256, 1260 (1993). Initially, we presume the Legislature intended the plain, ordinary meaning of the statute. *Id.* Where the meaning is clear and unambiguous, we construe and enforce the statute according to its express meaning. See *Langle v. Kurkul*, 146 Vt. 513, 515, 510 A.2d 1301, 1302-03 (1986). Words of doubtful meaning do not change common law rules; the intent to do so must be expressed in clear and unambiguous language. See *Estate of Kelley*, 160 Vt. at 533, 632 A.2d at 362.

■ We conclude that the wording of § 501(f) is clear and unambiguous, in the context of the whole statute, and it authorizes contribution in this case. The intoxicated driver is a person "responsible" for the injuries to the other motorist although the common law creates that responsibility rather than the Dram Shop Act. There is nothing in § 501(f), or the Act as a whole, to suggest that the Legislature used the word "responsible" in other than its ordinary and plain meaning. Indeed, the Legislature used the phrase "defendant in an action brought under this section" in subsection (f), showing that it knew how to limit its action to Dram Shop Act defendants when that was clear. It did not express such an intent in defining the responsible person from whom contribution could be sought; we conclude this omission was intentional. Finally, we think it is instruc-

tive that in two places the Act acknowledges the existence of common-law responsibility in circumstances not directly covered by the Act. See 7 V.S.A. §§ 501(b) (injured party may bring joint action against dram shop and person intoxicated), 501(g) (social host liability still governed by common law). Thus, the Legislature was clearly aware that responsibility could arise from the common law as well as from the Act.

Although in dicta, we have examined the statute once before and reached the same conclusion. In *Clymer v. Webster*, we cited the statute as permitting contribution between a dram shop and an intoxicated driver despite the lack of a common theory of liability between those defendants. 156 Vt. at 621 n.3, 596 A.2d at 909 n.3. On reexamination, we reaffirm its conclusion.

■ We have reached the above conclusion without relying on the legislative history cited by Haig's and Friends of Fairness in Vermont Dram Shop Law, which submitted an amicus curiae brief in support of reversal. As is often the case in this state, we find the legislative history sparse and ambiguous.[2] See *State v. Madison*, 163 Vt. 360, 372–74, 658 A.2d 536, 544-45 (1995) (per curiam) (legislative history consisting of witness comments and post-hoc committee reaction insufficient to overcome judicial consensus regarding meaning of term "review de novo" in constitutional amendment); *In re Killington, Ltd.*, 159 Vt. 206, 216, 616 A.2d 241, 247 (1992) (legislative history inconclusive and therefore insufficient to justify departure

---

[2] The dissent argues that the Legislature's refusal to make the intoxicated driver liable under the Act shows that it intended that no contribution from the intoxicated driver be available to the dram shop. We have no evidence that the Legislature directly linked these issues as the dissent suggests. Making contribution available to the dram shop would be a minor consequence of bringing the intoxicated driver under the Act compared to the major consequence of changing the standard of liability for the intoxicated driver from negligence to strict liability. We do not agree that the failure to bring the intoxicated driver under the Act is any evidence of the Legislature's intent to narrow the meaning of "responsible person" to only those liable under the Dram Shop Act.

Nor are we persuaded by the Legislature's failure to deal with the contribution right of the intoxicated driver. It is logical that the Legislature would have left it to the common law to define the contribution right, if any, because the common law governs the intoxicated driver's rights and liability. We are, of course, free to extend contribution rights to the intoxicated driver in light of the Legislature's action in providing such rights to dram shops. Cf. *Cold Springs Farm Dev., Inc. v. Ball*, 163 Vt. 466, 472, 661 A.2d 89, 93 (1995) (where the Legislature provided that judgments on small-claims counterclaims would not have preclusive effect in later litigation, Court adopted similar rule for claims-in-chief in small claims to avoid "an unfair and unjustified inconsistency").

from stare decisis). We do find support in the fact that each of the bills that led to the 1987 amendment to the Dram Shop Act had as one of its two main purposes to "limit liability under the 'dram shop' law." Statement of Purpose, S. 5, Vt. Bien. Sess. (1987); Statement of Purpose, S. 14, Vt. Bien. Sess. (1987); Statement of Purpose, H. 57, Vt. Bien. Sess. (1987). Our decision limits the eventual liability of a dram shop by allowing it to obtain contribution from the intoxicated driver. The opposite interpretation would not.

We are also not persuaded by Jensen's public policy arguments.[3] Essentially, Jensen restates the arguments against contribution generally, as set forth in *Howard v. Spafford,* and expresses concern that the injured motorist, Tanya Swett, may not recover all her damages, depending on how we apply the comparative negligence statute to Dram Shop Act cases. The main thrust of the *Howard* opinion is that any change to the no-contribution rule should come from the Legislature and not from this Court. See *Howard,* 132 Vt. at 438, 321 A.2d at 77. Section 501(f) undeniably provides for contribution in some circumstances; Jensen's arguments against contribution have been rejected for the circumstances covered by the statute.

We recognize there are complexities introduced by contribution between tortfeasors whose liability is based on different theories. As we noted in *Clymer,* other states have worked out contribution rules despite these complexities. See *Clymer,* 156 Vt. at 621 n.3, 596 A.2d at 909 n.3; see also 1 J. Mosher, Liquor Liability Law

---

[3] The dissent argues that the adoption of contribution from the intoxicated driver is tantamount to repealing the Dram Shop Act because the dram shop no longer has an incentive to comply with the law. We disagree that allowing contribution from the intoxicated driver will reduce incentive to comply with the law in any measurable way. See Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U. Pa. L. Rev. 130, 134 (1932) ("It is difficult to believe that the no contribution rule has ever had much effect by way of making careless people careful . . . ."). Whatever is the outcome of litigation between the dram shop and the intoxicated driver, the dram shop is likely to owe a substantial judgment to the injured motorist. The dram shop retains a strong interest in avoiding liability by complying with restrictions on serving intoxicated persons whether or not it can shift part of the cost to the intoxicated driver. We do not agree that the dram shop proprietor's behavioral calculation will somehow be affected by the possibility of defraying part of its losses by obtaining a contribution judgment, assuming it could collect on that judgment.

Even if we accepted the dissent's reasoning on incentives, its omission of the incentives on the intoxicated driver is glaring. In this case, the driver apparently has minimal insurance and the dram shop is the "deep pocket." To avoid collection difficulties, plaintiff settled quickly with the intoxicated driver and is pursuing the dram shop for most of her damages. The consequences for the intoxicated driver are minimal. The dissent's theory reduces or eliminates the driver's incentive to purchase adequate insurance or to avoid driving while intoxicated.

§ 18.03[6][a] (1995) (discussing cases which have allowed dram shop to obtain contribution against intoxicated person where there is "a finding of common liability for the plaintiff's injuries"). Moreover, much of the complexity is present even if we were to deny the availability of contribution. See *Plante v. Johnson*, 152 Vt. at 272-73, 565 A.2d at 1347-48. We believe that courts will treat the injured motorist fairly while allowing contribution as authorized by § 501(f).

Alternatively, Jensen urges us to affirm on either of two additional grounds raised below but not addressed by the trial court. We reject one of these grounds and decline to rule on the other because of the posture of the case.

First, Jensen argues that the third-party complaint was premature, and the right of contribution, even if available, must be enforced in a separate action. Haig's filed its third-party complaint pursuant to V.R.C.P. 14(a), which provides in pertinent part:

> At any time after commencement of the action a defend-ant as a third-party plaintiff may cause to be served a summons and complaint upon a person not a party to the action who is or may be liable to such third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

The rule allows a defendant to bring in a third party "who is or may be liable to him for some or all of the plaintiff's claim on a theory such as indemnity, subrogation, *contribution*, or warranty." Reporter's Notes, V.R.C.P. 14 (emphasis supplied).

 We have recently addressed the timing of third-party actions to enforce indemnity claims. See *Riblet Tramway Co. v. Marathon Electronics-Avtek Drive Div.*, 159 Vt. 503, 506-07, 621 A.2d 1274, 1275 (1993). We reasoned that third-party complaints may be filed even though a separate action would be premature because third-party plaintiff's liability to plaintiff is not established. *Id.* at 506, 621 A.2d at 1275. Thus, we held that "the third-party plaintiff's claim against the third-party defendant arises or accrues when the plaintiff files the complaint in the original action." *Id.* We see no reason for a different rule for a contribution claim.

 Jensen argues, however, that even if Rule 14(a) authorizes a third-party complaint for contribution, § 501(f) authorizes a contri-bution claim only in a separate action. Jensen misreads § 501(f). Although the section states that the dram shop's right to contribution

"may be enforced in a separate action brought for that purpose," nothing in the language suggests that a separate action is the exclusive method of enforcing the right. Indeed, Jensen's position would change the authorizing word "may" to "must." We conclude, instead, that the Legislature acted to ensure that contribution could be sought in a separate action, and not that it intended to prohibit use of third-party practice. The third-party complaint was not premature.

Alternatively, Jensen argues that we should affirm the dismissal of the third-party complaint because Jensen has settled with plaintiff, and obtained a release from her.[4] Plaintiff has not participated in this appeal because it involves solely the judgment between third-party plaintiff and third-party defendant. Because our determination of the effect of the settlement and release could affect the amount of plaintiff's recovery, we think it is unfair to resolve the effect of the settlement without her participation.[5] We remand to the trial court for that opportunity.

*Reversed and remanded.*

**Johnson, J.,** dissenting. I disagree with the majority's broad interpretation of the contribution provision in Vermont's Dram Shop Act (DSA), 7 V.S.A. §§ 501-507, because it effectively nullifies the purpose of the statute in direct contravention of the Legislature's intent.

The main issue in this case is the interpretation of 7 V.S.A. § 501(f), which states:

> A defendant in an action brought under this section has a right of contribution from any other responsible person or persons, which may be enforced in a separate action brought for that purpose.

The trial court held that the right of contribution was limited to persons responsible under the Act, i.e., those persons or entities

---

[4] Haig's attempted to amend its answer to raise the release as a defense to plaintiff's claims. Haig's argued that a release of one joint-tortfeasor releases all joint-tortfeasors. The trial court denied the motion finding that it was dilatory and that the defense was not warranted by the circumstances. This ruling is not before us because this interlocutory appeal is limited to whether the third-party complaint should have been dismissed.

[5] We also note that Jensen has filed a fourth-party complaint against plaintiff alleging that if he owes contribution to Haig's, he is entitled by the release to be indemnified by plaintiff. This gives plaintiff an additional stake in how we resolve the effect of the settlement and release.

expressly made liable under § 501(a) for injuries that result from intoxication induced in violation of the Act. Thus, defendant Haig's, which allegedly violated the DSA by overserving, could not seek contribution from the intoxicated driver who allegedly injured plaintiff. The majority reads the statute differently, and claims that the plain language permits a dram shop to seek contribution from the intoxicated person. In my view, the trial court correctly interpreted the statute.

> [A]s Judge Learned Hand said, "the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing," nevertheless "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

*Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454-55 (1989) (quoting *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.), *aff'd,* 326 U.S. 404 (1945)). Thus, in the words of Justice Holmes, the plain meaning rule is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48 (1928). A thoughtful examination of the purposes of the DSA and a thorough review of the legislative history show that the majority's reliance on the plain language doctrine is simplistic and incorrect.

The Dram Shop Act was enacted to overcome the common-law barrier preventing third parties from suing furnishers of intoxicating liquors. *Winney v. Ransom & Hastings, Inc.,* 149 Vt. 213, 215, 542 A.2d 269, 270 (1988). The overarching purpose of the Act and predecessor statutes is to include the server and furnisher of intoxicating liquor in the effort to prevent injuries resulting from intoxication and to ensure that, if an injury does occur, the injured party is properly compensated. See *Healey v. Cady,* 104 Vt. 463, 466, 161 A. 151, 152 (1932) (predecessor statute to DSA "was enacted to compel those who will hazard causing damage by furnishing intoxicating liquor to others to answer for such damage to those who may suffer it"); see also *Ackerman v. Kogut,* 117 Vt. 40, 47, 84 A.2d 131, 136 (1951) ("[T]he spirit and purpose of [a predecessor statute to the Dram Shop Act] is that traffic in intoxicating liquor shall be so conducted as to discourage intoxication and encourage temperance.");

1 J. Mosher, Liquor Liability Law § 2.01[2], at 2-4 (1995) (listing three purposes of dram shop acts: (1) protect public health and safety, (2) provide compensation, (3) regulate and discipline furnishers of intoxicating beverages).

Not surprisingly, dram shops have sought relief from the strict liability the Act imposes. During the 1987 legislative session, three bills were introduced as part of a comprehensive effort to revise the DSA and to limit dram shop liability. See Statement of Purpose, S. 5, Vt. Bien. Sess. (1987); Statement of Purpose, S. 14, Vt. Bien. Sess. (1987); Statement of Purpose, H. 57, Vt. Bien. Sess. (1987). Two of these bills contained a contribution provision. S. 5, § 1; H. 57, § 1. Most significantly, all of these bills, as introduced, broadened liability under the Act by including the intoxicated person as a responsible person in § 501(a), the section creating the action for damages. S. 5, § 1; S. 14, § 1; H. 57, § 1. If the bills had been passed as introduced, the intoxicated person would have been a defendant under the DSA, permitting contribution both by a dram shop against the intoxicated person and by an intoxicated person against a dram shop.

The Legislature, however, refused to accommodate fully the sponsors of the DSA amendments. After much debate in both the House and the Senate, the Legislature did not create a cause of action against the intoxicated person as a responsible person under the DSA. See 1987, No. 103. The pertinent section is virtually the same as that introduced except for the omission of the intoxicated person. Compare S. 5, § 1 with 1987, No. 103, § 1; see *Estate of Kelley v. Moguls, Inc.*, 160 Vt. 531, 533, 632 A.2d 360, 362 (1993) (legislative history demonstrated that Legislature considered and rejected attempt to have DSA preempt all common-law negligence actions against sellers and furnishers of alcoholic beverages when facts of case do not fall within Act's scope).

While specifically rejecting DSA liability against the intoxicated person, the Legislature did adopt the contribution provision, but it did so to cure what it viewed as a "deep pockets" problem. See *Hearings on S. 5 Regarding Dram Shop Liability Before the House General & Military Affairs Comm.*, Vt. Bien. Sess. 10-15 (Mar. 25, 1987) (testimony by Bill Fisher, Michael Grisanti, and Daniel Pudvah). To limit liability under the DSA and to ensure that furnishers are only responsible in proportion to their liability for illegally serving intoxicating liquors, a "deep pockets" furnisher is now able to seek contribution from other responsible furnishers. *Id.*

The point may be raised, of course, that the Legislature's refusal to create a cause of action under the Dram Shop Act against the

intoxicated driver is a separate and distinct issue that has no bearing on the meaning of "any responsible person" found in the section allowing dram shop defendants to seek contribution. Several reasons militate against reading the two sections separately.

First, the majority goes further in limiting liability for dram shops than even the proponents had thought possible. Under the original bills, the proponents conceded that both dram shops and intoxicated persons would be able to seek contribution from each other. When the Legislature removed the intoxicated person as a person responsible under the DSA, the intoxicated person lost the ability to seek contribution from the dram shop. See 7 V.S.A. § 501(f) (right of contribution given only to a "defendant in an action brought under" DSA); *Howard v. Spafford*, 132 Vt. 434, 435, 321 A.2d 74, 74-75 (1974) (Vermont common law does not permit contribution among joint tortfeasors). Allowing contribution against the intoxicated person would, in effect, make that person liable for damages that result from liability under the Act. Not only is this contrary to what the Legislature intended, it produces a highly inequitable result because the right to contribution applies only to one joint tortfeasor, the dram shop. Moreover, this anomalous result suggests that the right to seek contribution was linked to the section creating responsible parties under the Act, and was not meant to include wholesale contribution from those not liable under the Act.

Second, if we alter the facts and change the target of the contribution from an intoxicated driver to a sober driver, and include other potentially "responsible" parties, it is apparent that the Legislature could not have intended the majority's broad interpretation. For example, while his parents are out of town, a fourteen-year-old boy, under the supervision of an adult caretaker, is served at two different bars and becomes intoxicated. The boy leaves the bar, staggers blindly into the street, and is struck and injured by a speeding car, driven by a sober driver. The child's parents sue the owners of the first bar. See 7 V.S.A. § 501(a)(1) (creating cause of action for serving minor). The owners of the first bar attempt to seek contribution from "any other responsible person." *Id.* § 501(f). Under the majority's plain meaning interpretation, three different persons might be held responsible for contribution: (1) the second bar is responsible under the DSA, (2) the sober driver may be responsible on a negligence theory, and (3) the adult caretaker is responsible for permitting the child to go to a bar. If one cares to complicate the facts further, additional parties could be added.

As noted above, the common law of Vermont has not permitted contribution among joint tortfeasors. *Howard v. Spafford*, 132 Vt. at 435, 321 A.2d at 74-75. Nor has the Legislature seen fit to adopt any version of the Uniform Contribution Among Tortfeasors Act, which has been in effect in some states for many years. See *Tebo v. Havlik*, 343 N.W.2d 181, 212 n.84 (Mich. 1984) (Ryan, J., concurring) (detailing states that have adopted 1939 or 1955 Uniform Contribution Among Tortfeasors Act). It is not plausible to me that the Legislature intended to change the entire law of contribution in the state of Vermont solely for dram shop owners. It is plausible that the Legislature considered allowing contribution among parties liable under the Act, including the least sympathetic party among potential joint tortfeasors — the intoxicated driver. While it rejected making the intoxicated driver liable, the Legislature adopted a limited form of contribution to operate within the confines of the DSA alone.

Third, by permitting contribution against the intoxicated tortfeasor and others, the majority severely undercuts the essential purpose for which the DSA was enacted — to prevent dram shops, despite their self-interest in selling liquor, from serving persons in violation of the statute. The majority permits furnishers to shift liability away from the very persons the DSA is intended to reach. This removes an important legislative incentive for dram shops to comply with the law. If the Legislature had intended to diminish the effectiveness of the statute in this manner, it would have repealed it. Instead, the majority has accomplished repeal.

Accordingly, I dissent.