**Emily MATSON, a minor, by her legal guardian, Mary KEHOE, Plaintiff,**

v.

**Richard ANCTIL and Materiaux Blanchet, Inc., Defendants.**

**No. 2:96–CV–110.**

United States District Court, D. Vermont.

Oct. 1, 1997.

---

Robert E. Manchester, Manchester Law Offices, P.C., Burlington, VT, for Plaintiff.

William Andrew O'Rourke, III, Ryan, Smith & Carbine Ltd., Rutland, VT, Douglas Dwight Le Brun, Dinse, Erdmann, Knapp & McAndrew, Burlington, VT, for Defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

In this personal injury action, Defendants Richard Anctil and Materiaux Blanchet, Inc. ("MBI") have moved for leave to assert third party claims against the parents of Plaintiff Emily Matson ("Emily"). Emily has moved for partial summary judgment, seeking this Court's ruling that as a matter of law the Defendants cannot prevail in their claim that her injuries "were the result of negligence on the part of the Plaintiff or other third parties, which negligence was greater in kind and degree than the negligence, if any, of the [Defendants [1]]." Amended Answers (paper 18 and attach. to paper 41). The Defendants have also moved for summary judgment and partial summary judgment, asserting that Emily lacks the capacity to sue through her guardian in this case, and that she is not entitled to recover damages for medical bills and related expenses incurred during her minority. For the reasons stated below, Defendants' motions (papers 33, 36, and 39) are denied. Plaintiff's motion (paper 22) is granted.

## I. *Factual Background*

Emily Matson, who was born July 12, 1989, was badly injured in an automobile accident on May 22, 1992. At the time of the accident, Emily was a passenger in her parents' 1990 Dodge minivan, traveling north on Interstate 91 near Sheffield, Vermont. Her father was driving, and her mother held Emily in her lap in the front passenger seat. The accident occurred when the minivan struck the rear of a tractor trailer truck operated by Anctil, a citizen of Canada and resident of Quebec, who was also traveling north on the interstate. The complaint alleges that at the time, Anctil was acting as an agent for MBI, a trucking company with its principal place of business in Quebec.

Through a guardian appointed by the Probate Court for Chittenden County, Vermont, Emily has sued Anctil and MBI for damages for her injuries. At all times relevant to this action, Emily and her parents have been residents of Rhode Island.

## II. *Discussion*

### A. *Choice of law*

 In diversity cases, a federal court must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir.1994). Recently the Vermont Supreme Court adopted the "significant contacts" approach of the Restatement (Second) for choice of law decisions in tort cases, in *Amiot v. Ames*, 693 A.2d 675 (Vt.1997). *See also Miller v. White*, —— Vt. ——, 702 A.2d 392 (1997).

The Defendants argue that, under *Amiot*, this Court should apply Rhode Island law to the issues of whether the Defendants may sue Emily's parents for contribution, and whether the Defendants' liability, if any, may be weighed against the parents' liability, if any. The Plaintiff asserts that Vermont law should apply.

According to the Restatement's section 145(1), "[t]he rights and liabilities of the parties with respect to an issue in tort will be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Restatement (Second) of Conflict of Laws* § 145(1) (1971). In a personal injury action, the state or country with the most significant relationship will usually be that where the injury occurred. *Amiot*, 693 A.2d at 678.

---

**1.** In both Defendants' Amended Answers, the parties appear to have inadvertently substituted "Plaintiff" for "Defendant" here.

Of the seven general choice of law principles set forth in section 6, only four factors are significant in the field of torts: the needs of the interstate systems; the relevant policies of the forum; the relevant policies of other interested states,and the relative interests of those states in the determination of the issue; and ease in the determination and application of the law to be applied. *Id.; Miller,* 702 A.2d at 393; *Restatement (Second),* § 6(2)(a)-(c), (g). In applying these factors, a trial court takes into account the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Restatement (Second),* § 145(2).

The injury and the conduct causing the injury occurred in Vermont. The minor Plaintiff Emily is a resident of Rhode Island and her guardian is a Vermont resident. Defendant Anctil is a resident of Quebec, Canada, and Defendant MBI is a company with its principal place of business in Quebec, Canada. The parents, whom the Defendants seek to implead, are residents of Rhode Island. The relationship between Emily and her parents is centered in Rhode Island. The relationship between Anctil and MBI is centered in Quebec. According to the Restatement, these contacts are to be evaluated according to their relative importance with respect to the particular issue at stake. *Id.*

At issue here is whether the Defendants may sue Emily's parents for their alleged negligent conduct, and whether the Defendants' liability may be reduced or eliminated by the parents' negligence. The place where the injury and the conduct causing injury occurred is relatively more important on this issue than the place where either relationship is centered, or where the parties reside. *See Restatement (Second),* § 145, Comment on Subsection (2)(e), (f).

This case is distinguishable from *LeBlanc v. Stuart,* 342 F.Supp. 773 (D.Vt.1972), in which Chief Judge Holden held that where the family domicile was in Rhode Island, Rhode Island law would apply to the issue of whether a widow could sue her husband's estate for injuries sustained in Vermont in an automobile accident allegedly caused by her husband's negligence. In *LeBlanc,* the issue before the Court was disability and immunity from suit in an intra-family tort, and Rhode Island was deemed to have a more significant interest in the issue than Vermont. In this case, although the Plaintiff's decision not to sue her parents underlies the Defendants' request to implead the parents, the issue of whether the parents' negligence may be made part of this lawsuit has nothing to do with the family relationship.

In determining whether Rhode Island, Quebec or Vermont has the most significant relationship to the issue, the relevant section 145(2) contacts favor application of the law of Vermont, because both the injury and the conduct causing injury occurred in Vermont, and the other factors are relatively less important on the issue. With regard to the needs of interstate and international systems, *Restatement (Second),* § 6(a), it does not appear that either Quebec or Rhode Island would be offended by this Court's application of Vermont law to the issue. Quebec's only relationship to the issue is the fortuitous circumstance that the Defendants are citizens of that province. Rhode Island has adopted the principle that choice of law depends on a determination of which jurisdiction has the most significant interest in the litigation, and thus would likely reach the same result as this Court. *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, 922 (1968). *See also Blais v. Aetna Cas. & Surety Co.,* 526 A.2d 854, 856 (R.I.1987) (Rhode Island court would apply Massachusetts law to issue whether plaintiffs were entitled to recover damages under uninsured motorist provision of automobile policy, where injury and conduct causing injury occurred in Massachusetts).

With regard to the relevant policies of the forum, section 6(2)(b), Vermont as the site of the accident has a strong and obvious interest in "regulating the conduct of persons within its territory and in providing redress for injuries that occurred there." *Restatement (Second),* § 145, Comment on Subsection (1)(d). With regard to the relevant policies of other interested states, and

their relative interests, section 6(2)(c), the Defendants have not shown, nor can the Court discern, that either Rhode Island or Quebec has an equally strong or greater interest in regulating extraterritorially on this issue.

Finally, this Court's decision to apply Vermont law to this issue satisfies section 6(2)(g), ease in the determination and application of the law to be applied. Because Vermont has the most significant relationship to the issues of whether the Defendants may implead Emily's parents, and whether the Defendants may pursue a defense of comparative negligence, this Court will apply the law of Vermont to the issues.

### B. Joint Contribution Among Tortfeasors

■ Anctil and MBI seek to assert third party claims for contribution against Kevin and Pamela Matson based on negligent supervision and care for their daughter, and against Kevin Matson for negligent operation of a motor vehicle. Rule 14(a) of the Federal Rules of Civil Procedure provides that a defendant may implead as a third-party defendant a person "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Impleader is proper " 'only when a right to relief exists under the applicable substantive law. If for example, the governing law does not recognize a right to contribution . . . , impleader for these purposes cannot be allowed.' " *Eagle Star Ins. Co. v. Metromedia, Inc.,* 578 F.Supp. 184, 187 (D.Vt.1984) (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 at 246–50 (1971)).

■ As discussed above, this Court will apply the substantive law of Vermont in determining whether the Defendants may bring a third-party complaint for contribution. At common law there was no right to contribution among joint tortfeasors. *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 634, 101 S.Ct. 2061, 2063–64, 68 L.Ed.2d 500 (1981); *Spalding v. Adm'r of Oakes,* 42 Vt. 343, 347 (1869). Although the rule against joint contribution derived from the case of *Merryweather v. Nixan,* 101 Eng. Rep. 1337 (K.B.1799), which barred contribution in intentional tort cases, American jurisdictions

tended to interpret *Merryweather* as barring contribution among wrongdoers in all tort cases. *Northwest Airlines, Inc. v. Transp. Workers Union,* 451 U.S. 77, 87, 101 S.Ct. 1571, 1578–79, 67 L.Ed.2d 750 (1981); *Zapico v. Bucyrus–Erie Co.,* 579 F.2d 714, 718 (2d Cir.1978).

■ In *Spalding,* plaintiffs argued specifically that the rule against joint contribution should not apply to non-intentional torts. 42 Vt. at 345. The Vermont Supreme Court held, however, that the rule against joint contribution applied in negligence cases. *Id.* at 349. The holding has been criticized, *see Spalding,* note (Tuttle 1891) (Book XIII at 131–32), but the Vermont Supreme Court has consistently reiterated that in the absence of a statute to the contrary, there is no right of contribution between joint tortfeasors, whether negligent or intentional. *Chapman v. Sparta,* —— Vt. ——, 702 A.2d 132, 133 (1997); *Swett v. Haig's Inc.,* 164 Vt. 1, 663 A.2d 930 (1995); *Turcotte v. Estate of La-Rose,* 153 Vt. 196, 569 A.2d 1086 (1989); *Howard v. Spafford,* 132 Vt. 434, 321 A.2d 74 (1974); *Spalding,* 42 Vt. at 349 (1869). *See also Cote v. Estate of Butler,* 518 F.2d 157, 159 (2d Cir.1975); *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 894 F.Supp. 777 (D.Vt.1995); *Foucher v. First Vermont Bank & Trust Co.,* 821 F.Supp. 916, 928 (D.Vt.1993); *Eagle Star,* 578 F.Supp. at 187; *Viens v. Anthony Co.,* 282 F.Supp. 983 (D.Vt.1968).

In *Howard v. Spafford,* a personal injury action arising out of a two-car collision, one driver, the original defendant, brought a third-party complaint for contribution against the other driver. The trial court dismissed the third-party complaint for failure to state a cause of action. On appeal, the Vermont Supreme Court was urged to abandon the rule against contribution between joint tortfeasors, given the recent enactment of Vermont's comparative negligence statute, effective 1970. Vt. Stat. Ann. tit. 12, § 1036 (1973) (amended 1979). The Court ruled that the enactment of the comparative negligence statute did not abrogate the no contribution rule. *See Swett,* 164 Vt. at 5, 663 A.2d at 932. In affirming the dismissal, the Court

stressed that if the rule against contribution is to be relaxed or abandoned, the legislature, not the judiciary, is the appropriate body to undertake this alteration. *Howard,* 132 Vt. at 437, 321 A.2d at 76.

■ *Howard v. Spafford* is indistinguishable from the case at bar. Although the decision is more than twenty years old, the vitality of its holding has been reaffirmed by the Vermont Supreme Court within the past month. *Chapman,* 702 A.2d at 133. Accordingly, this Court denies Defendants' Motion for Leave to Assert Third Party Claims, because under *Howard v. Spafford* the Third Party Complaint fails to state a claim upon which relief can be granted.

## C. *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. The party opposing summary judgment may not rest on its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513–14, citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Unless there is sufficient evidence to enable a jury to return a verdict in favor of the nonmoving party, there is no issue for trial. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

## D. *Plaintiff's Negligence*

Anctil's and MBI's Amended Answers asserted as an affirmative defense that: [t]he injuries sustained by the 'Plaintiff were the result of negligence on the part of the Plain-tiff or other third parties, which negligence was greater in kind and degree than the negligence, if any," of the Defendants. Amended Answers (paper 18 and attach. to 41). On May 22, 1992, when the accident occurred, Emily was two years and eleven months old. As discussed above, Vermont law applies to this issue.

■ Vermont does not subscribe to a rule that below a certain age a child is automatically incapable of exercising care or discretion, and so cannot be found contributorily negligent. *Mitchell v. Amadon,* 128 Vt. 169, 260 A.2d 213 (1969); *Johnson's Adm'r v. Rutland R.R.,* 93 Vt. 132, 139, 106 A. 682 (1919). In *Johnson,* the Vermont Supreme Court set forth this state's doctrine on the contributory negligence of children, holding that there will be cases in which a child may be of such tender years that she will be conclusively presumed incapable of judgment and discretion, and others in which the child is so mature in age and intelligence that she will be deemed capable of exercising care as a matter of law, but that

> [l]ying between these limits, necessarily undefined as to age, are the cases where the capacity to encounter and avoid a given danger cannot be ruled as a matter of law, either that the child has or does not have any capacity for caution, or was capable of exercising care for his safety in the circumstances.

93 Vt. at 140, 106 A. 682.

Thus, in cases in which children between the ages of three and seven were injured by vehicles, the Vermont Supreme Court has held that the issue of the children's capacity to grasp the nature and extent of danger and to exercise due care under the circumstances was for the jury to determine. *Mitchell,* 128 Vt. at 177–78, 260 A.2d at 218 (1969) (five year old child darting into traffic); *Beaucage v. Russell,* 127 Vt. 58, 64, 238 A.2d 631, 635 (1968) (eight year old riding a bike on highway); *Parker v. Gunther,* 122 Vt. 68, 73, 164 A.2d 152, 156 (1960) (six year old walking to school); *Johnson's Adm'r,* 93 Vt. at 140, 106 A. 682 (six year old crossing railroad tracks); *Robinson v. Cone,* 22 Vt. 213 (1850) (three year old sledding on public highway). However, a child two years and seven months of

age was deemed to be incapable of exercising care as a matter of law in a case involving a collision between an automobile and a train, in which the child was a passenger in her parents' car. *Howe v. Central Vt. Ry.*, 91 Vt. 485, 493, 101 A. 45 (1917).

▆▆▆▆ This Court finds as a matter of law that Emily, not yet three years old, a passenger in her parents' car, was incapable of comprehending the nature and extent of her danger, or of exercising care for her safety, under the undisputed circumstances presented in this case. *Id.* Any negligent conduct on the part of her parents cannot be imputed to Emily. *Id.; Robinson*, 22 Vt. at 224. Accordingly, Plaintiff is entitled to partial summary judgment on the affirmative defense of comparative or contributory negligence.[2]

### E. *Lack of capacity to sue*

▆▆▆ A party raising the issue of lack of capacity to sue must do so by specific negative averment. Fed.R.Civ.P. 9(a). The failure to challenge a party's capacity either by a motion at a very early stage in the proceeding or in the responsive pleading may result in a waiver of the defense or denial of the motion as untimely. 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1542 (2d ed.1990). Because the Plaintiff has not argued that the defense is waived, and has proceeded to brief the issue fully, and because the motion was in fact brought at a relatively early stage of the litigation, the Court will reach the merits of the motion. The parties do not dispute that Vermont law governs this issue. Fed.R.Civ.P. 17(b).

The Defendants claim that Emily lacks the capacity to sue through her guardian, because the Chittenden County Probate Court had no authority to appoint a guardian for her in this case. They assert that a nonresident minor may have a guardian appointed for her only if the minor has an interest in or owns real property within the State of Vermont. The Plaintiff argues that a minor who owns real or personal property within the state may have a guardian appointed for her regardless of her residence.

Title 14, section 2645(5) of the Vermont Statutes provides that a probate court may appoint a guardian for a minor "[w]hen the minor has a parent living and the minor is the owner of real or personal property." Vt. Stat. Ann. tit. 14, § 2645(5) (1989). A guardian appointed pursuant to this subdivision may have the care and management of the estate of the minor, but not custody of the minor. *Id.* Title 14, section 2649 provides that a probate court may appoint a guardian for a nonresident minor "when it appears that the minor owns or has an interest in real estate situated in the state." Vt. Stat. Ann. tit. 14, § 2649 (1989). Title 14, section 2711 provides that a probate court may appoint a guardian for the property of a non-resident who owns or has an interest in real or personal property within the state if the person "would be liable to be put under guardianship under any of the provisions of this chapter," if she were a resident of the state. Vt. Stat. Ann. tit. 14, § 2711 (1989).

The parties agree that Emily owns no real property within the State of Vermont, that her personal property consists of this pending lawsuit, and that she has at all times been a resident of the State of Rhode Island. The Plaintiff argues first that because section 2645 has not been specifically limited to minors who reside within Vermont, subsection (5) authorizes a Vermont probate court to appoint a guardian for a minor living anywhere who has a parent living and who owns real or personal property. The Plaintiff argues second that section 2711 authorizes the appointment of a guardian for the property of a non-resident who owns or has an interest in real or personal property.

▆▆▆▆ When interpreting statutes, courts must give effect to the intent of the legislature. *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984); *In re Estate of Cartmell*, 120 Vt. 228, 230, 138 A.2d 588, 589 (1958). The appropriate construction "is to be ascertained, not from a literal sense of the words used, but from a consideration of the

---

2. Defendants are not foreclosed, of course, from demonstrating at trial that the parents' conduct was the proximate cause of Emily's injuries, and that the Defendants' negligence, if any, was not a substantial factor in bringing about her injuries.

whole and every part of the statute." *Id.* Statutes relating to the same subject matter should be construed with reference to each other as parts of one system. *Central Vermont Hosp., Inc. v. Town of Berlin,* 164 Vt. 456, 459, 672 A.2d 474, 476 (1995), quoting *Emmons v. Emmons,* 141 Vt. 508, 512, 450 A.2d 1113, 1115 (1982).

▉ Plaintiff's first argument fails because interpreting section 2645 to apply to resident and non-resident minors alike renders section 2649 virtually superfluous. There would be no need to specify in section 2649 that non-resident minors who own or have an interest in Vermont real estate may have a guardian appointed for them, if section 2645(5) authorized the same appointment. To give full meaning and effect to the statutes, section 2645 must be construed as authorizing only the appointment of guardians to resident minors, under the various circumstances set forth in its five subsections, one of which is when the minor has a parent living and is the owner of real or personal property. The probate court therefore lacked authority to appoint a guardian for Emily under section 2645(5).

▉ However, if Emily were a resident of Vermont, she would qualify for the appointment of a guardian under section 2645(5). Under the express terms of section 2711, as a non-resident who "would be liable to be put under guardianship" under section 2645(5) if she were a resident, she was entitled to have a guardian appointed for her real or personal property. A probate court therefore had the authority to appoint a guardian for Emily under section 2711.

The Defendants respond that the probate court's order appointing Emily's guardian is void because it not only granted the guardian power over the property, but granted power over her "custody and tuition," and "the right to exercise authority over her as authorized by 14 V.S.A. § 2653." Appointment of Guardian (paper 34, ex. C). The probate court's authority under section 2711 extended only to the appointment of a guardian for the care and management of Emily's estate. Its order of appointment erroneously granted the guardian full guardianship powers over the minor. The fact that the order granted additional unwarranted powers to the guard-

ian does not affect the probate court's jurisdiction to grant guardianship over the property, nor render its order void. Moreover, the probate court amended its order of appointment on January 22, 1997, deleting the guardian's power over Emily's "custody and tuition." Amended Appointment, attached to letter to court dated February 13, 1997. Mary Kehoe, Esq., as the guardian of Emily's estate, appointed under the authority of sections 2711 and 2645(5) of the Vermont Statutes, may pursue this case on Emily's behalf. Fed.R.Civ.P. 17(c).

### F. Recovery of Damages for Medical Expenses

▉ Ordinarily a cause of action for damages for medical expenses caused by injury to a child belongs to the parent or guardian who is obligated to support and care for the child. *Trapeni v. Walker,* 120 Vt. 510, 516, 144 A.2d 831, 835 (1958). A child plaintiff is not precluded from recovering her medical expenses if she establishes that she is legally obligated to pay them, however. *Verchereau v. Jameson,* 122 Vt. 189, 194, 167 A.2d 521, 525 (1961).

▉ The Plaintiff argues that she may be legally obligated to pay for her medical expenses because health care providers have asserted or may assert subrogation claims. The Defendants argue that Emily's parents have paid and will pay her medical bills. The material facts concerning whether Emily is or may become legally obligated for medical expenses incurred during her minority are evidently disputed, and summary judgment is therefore inappropriate. *Id.* (conflict in evidence concerning whether infant plaintiff is legally obligated to pay medical expenses may be for jury to resolve).

### III. Conclusion

Defendants' Motion for Leave to Assert Third Party Claims (paper 39) is DENIED. Plaintiff's Motion for Partial Summary Judgment (paper 22) is GRANTED. Defendants' Motion for Summary Judgment Re: Lack of Capacity to Sue (paper 33) and Defendants' Motion for Partial Summary Judgment Re:

Medical Bills and Expenses (paper 36) are DENIED.