## In re Killington, Ltd. and International Paper Realty Corp.

[616 A.2d 241]

No. 90-535

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ., and Peck, J. (Ret.),**
**Specially Assigned**

Opinion Filed September 11, 1992

*Allan R. Keyes* and *John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Appellant Killington, Ltd.

*Robert E. Woolmington* of *Witten, Saltonstall & Woolmington, P.C.*, Bennington, for Appellees Town of Shrewsbury and Shrewsbury Planning Commission.

*Jeffrey L. Amestoy*, Attorney General, and *Mark J. Di Stefano*, Assistant Attorney General, Montpelier, for Appellee Vermont Agency of Natural Resources.

**Dooley, J.** The Vermont Environmental Board denied an Act 250 permit to Killington, Ltd., for construction of a pond intended to enhance Killington's snowmaking capacity at its ski area. Killington appeals that ruling, which was based on the Board's conclusion that the proposed construction would not satisfy 10 V.S.A. § 6086(a)(8)(A) because it would imperil a habitat necessary to the survival of a population of black bears. We affirm.

Application for the permit was filed on February 18, 1986, with District Environmental Commission No. 1. The application sought approval to divert the waters of Madden Brook to build a snowmaking pond in an area known as Parker's Gore East in the Town of Mendon. After extensive hearings and procedural maneuvering, the District Commission denied the application on July 14, 1987. The Commission found that construction of the pond would threaten a population of black bears by making inaccessible a stand of beech trees used by the bears for food. The Commission also found that the construction would prevent the bears from using a tract of spruce and fir to travel into Parker's Gore East, where they build up body fat in the fall in preparation for winter hibernation.

Pursuant to 10 V.S.A. § 6089(a), Killington appealed the Commission's denial to the Environmental Board on August 13, 1987. The appeal challenged the Commission's decisions to grant party status to certain organizations and municipalities and to impose conditions on any permit that might be issued. Its fundamental challenge, however, was to the conclusion, under 10 V.S.A. § 6086(a)(8)(A) (hereinafter criterion 8(A)), that the project would significantly impair necessary wildlife habitat, would not utilize all feasible and reasonable means of lessening the alleged impairment, and would be a detriment to the general welfare of the public. Killington asserted that the Commission's findings did not support its conclusions and that the conclusions were based on a fundamental misconstruction of the term "necessary wildlife habitat" as used in the statute.

Pursuant to Environmental Board Rule 14(A), and over Killington's objection, the Board granted party status to Two Rivers-Ottauquechee Regional Planning Commission and the towns and planning commissions of Shrewsbury and Bridgewater because they adjoined land "contiguous to the site of the

proposed project that is owned or controlled by Killington." During the evidentiary stage of the Board's review, the Town of Shrewsbury sought to present evidence that, in addition to the harm likely to be done to the bears' use of the beech, spruce and fir trees, the proposed pond construction would also destroy wetlands in Parker's Gore East critical to the animals' survival. The subject of the wetlands had not been raised by any party before the Commission and was not addressed in the Commission's findings, conclusions or order. Over Killington's objection, the Board allowed the evidence to be presented because it was probative of "the existence of necessary bear habitat in Parker's Gore East" and the likely effect of pond construction and operation on that habitat, the issues raised by Killington's appeal.

On May 11, 1989, the Board ruled that the term "necessary wildlife habitat" in criterion 8(A) covered habitat critical to the survival of the particular wildlife population dependent on it, and that Parker's Gore East constituted necessary wildlife habitat. It also concluded that construction and operation of the pond would destroy or significantly impair that habitat in a number of respects. On September 21, 1990, the Board issued its final findings. It concluded that Killington met none of the subcriteria of criterion 8(A),[1] which, if satisfied, allow the issuance of a permit regardless of the imperilment of necessary wildlife habitat. Therefore, the Board also denied the permit.

On appeal, Killington contends that (1) the Board erred in granting party status to the municipalities and planning com-

---

[1] These are set forth in 10 V.S.A. § 6086(a)(8)(A)(i)-(iii) as follows:

　　(A) Necessary wildlife habitat and endangered species. A permit will not be granted if it is demonstrated by any party opposing the applicant that a development or subdivision will destroy or significantly imperil necessary wildlife habitat or any endangered species, and

　　(i) the economic, social, cultural, recreational, or other benefit to the public from the development or subdivision will not outweigh the economic, environmental, or recreational loss to the public from the destruction or imperilment of the habitat or species, or

　　(ii) all feasible and reasonable means of preventing or lessening the destruction, diminution, or imperilment of the habitat or species have not been or will not continue to be applied, or

　　(iii) a reasonably acceptable alternative site is owned or controlled by the applicant which would allow the development or subdivision to fulfill its intended purpose.

missions; (2) the Board erred in considering the issue of wetlands in Parker's Gore East; (3) the Board erred in defining "necessary wildlife habitat" for the purpose of criterion 8(A) to mean habitat critical to the survival of a particular population of wildlife, rather than to that of an entire species in Vermont; and (4) the Board's findings did not support its conclusions that necessary black bear habitat existed in Parker's Gore East and that such habitat would be destroyed or imperiled by the proposed project.

■ It is important at the outset to emphasize the deference with which we treat decisions by the Environmental Board as to matters properly within its jurisdiction. See *In re Denio*, 158 Vt. 230, 239, 608 A.2d 1166, 1171 (1992) (Board's decisions presumed to be "'correct, valid and reasonable . . . and we will normally defer to its determinations'") (quoting *Vermont State Colleges Faculty Federation v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419–20 (1989)). The Board, of course, is required to follow both the standards established by the Legislature and the procedures which it has itself adopted in order to carry out its statutory mandate. However, "'absent compelling indication of error,' we will sustain the interpretation of a statute by the administrative body responsible for its execution." *In re Duncan*, 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990). The same is true for an agency's interpretation of its own rules. See *Rogers v. Watson*, 156 Vt. 483, 489, 594 A.2d 409, 412 (1991). As to findings of fact, we must affirm the Board if its findings are based on substantial evidence. 10 V.S.A. § 6089(c); see *Denio*, 158 Vt. at 238, 608 A.2d at 1170–71. Conclusions, in turn, are affirmed when "rationally derived from [the] findings and based on a correct interpretation of the law." *In re Southview Associates*, 153 Vt. 171, 178, 569 A.2d 501, 504 (1989).

■ Killington first argues that the Board erred in admitting parties to the permit-approval proceeding that were not entitled to be included. At the outset, we must narrow this claim to the Town of Shrewsbury and the Shrewsbury Planning Commission (hereinafter Shrewsbury). The parties to which Killington objects, other than Shrewsbury, did not present evidence, cross-examine Killington's witnesses, or otherwise participate in the hearings. In order to obtain relief on appeal,

Killington must show that an asserted error prejudiced its rights. See *Cadel v. Sherburne Corp.*, 139 Vt. 134, 136, 425 A.2d 546, 547 (1980) (on appeal, burden is on appealing party to show that error resulted in prejudice). It has not done so with respect to these parties.

The situation is arguably different with respect to Shrewsbury. Shrewsbury participated in the hearings before the Board and presented witnesses, on whose testimony the Board relied in part regarding the wetlands issue. Although we have doubts as to whether this participation could be the cause of a new hearing before the Board,[2] we will examine the merits of Killington's claim that the admission of Shrewsbury into the proceeding was improper.

Shrewsbury petitioned the Board to be admitted either as a statutory party, under 10 V.S.A. §§ 6084(a), 6085(c), or as a permitted party, pursuant to Environmental Board Rule 14(B)(2), on the ground that such admission would materially assist the Board in its proceedings. The Board decided that Shrewsbury was entitled by statute to party status, and so did not reach the issue of whether Shrewsbury should be a permitted party.

▇▇ Act 250 provides that a municipality that is required to be given notice of a permit application will be considered a party to the proceeding. 10 V.S.A. § 6085(c). Parties entitled to notice include "a municipality, and municipal and regional planning commissions wherein the land is located, and any adjacent

---

[2] Killington has cited to no case where the participation of an improperly admitted party led to a new administrative hearing on the merits, and we have found none in this or any other jurisdiction. Although we do not decide that such a remedy is inappropriate in every case, we do not see how it would be appropriate in this case. Other parties now rely on the evidence that Shrewsbury sponsored; this evidence would be admitted in any new hearing unless we were to prohibit its use. Absent such a prohibition, a reversal will have no effect on the evidence and will serve only to give Killington another chance to convince a newly constituted Board to see the issues Killington's way. This appellate remedy is unconnected to the asserted error and therefore is inappropriate. Nor do we consider it appropriate to prohibit the use of relevant evidence in a public regulatory process charged with determining the public interest. Cf. *In re Trust Estate of Flynn*, 158 Vt. 268, 275, 609 A.2d 984, 988 (1992) (issues raised in probate court by improperly admitted parties must be considered by superior court on appeal). If the applicant's only claim of prejudice is that it should have prevailed before an inadequately informed Board, we should not honor that claim.

Vermont municipality, municipal or regional planning commission if the land is located on a boundary." *Id.* § 6084(a). Environmental Board Rule 14(A), which implements this statute, states that "if the project site is located on a boundary, any Vermont municipality adjacent to that border and the municipal and regional planning commissions for that municipality" will be statutory parties. Killington argues that, under this statutory and administrative scheme, a bounding municipality must border directly on the land where the project site is located in order to be considered a statutory party. For this proposition, Killington points to the specific language of Rule 14(A). Appellees argue, and the Board held, that a municipality may be a statutory party if it lies adjacent to any portion of the land owned or controlled by the applicant that is part of the property on which the proposed project site will sit and is in any way affected by the proposed project.

The facts on which the positions of the parties are based are not in dispute. The proposed pond would lie wholly within the Town of Mendon, and not immediately adjacent to the Shrewsbury town line. The area known as Parker's Gore East, however, is bounded on the south by the Shrewsbury town line. Moreover, parts of Killington's ski area lie in Mendon along the Shrewsbury town line, and the purpose of the pond development is to enhance snowmaking throughout Killington's ski area.

For two reasons, we do not believe that Killington has demonstrated reversible error in the Board's admission of Shrewsbury. First, the decision on whether to admit Shrewsbury depends on the proper interpretation of the term "the land" as used in the statute, § 6084(a), and the corresponding provisions of Environmental Board Rule 14(A). As discussed above, we give great weight to the interpretation of the statute, as well as its implementing regulations, made by the agency entrusted with its administration. The Board reasoned that Killington's interpretation would allow a developer to reserve a narrow buffer strip between its project and an adjoining municipality in order to deprive the municipality of party status, even though the impact of the development on the municipality would be the same as if the buffer strip did not exist. Although the Board's hypothetical is unlikely, it does point out the need to interpret

the statute in a way that recognizes the impact on an affected municipality, rather than only the physical site of the development activity. See *In re Conway*, 152 Vt. 526, 530, 567 A.2d 1145, 1147 (1989) (because the purpose of the notice provision is to provide notice to persons whose land is affected by the development, the term "adjoining properties" should be interpreted to give effect to that purpose). The Board's conclusion that the statutory language includes more than the land to be physically altered is reasonable, particularly in light of the statutory scheme that gives a voice to persons and entities affected by development. See *In re Great Waters of America, Inc.*, 140 Vt. 105, 109, 435 A.2d 956, 959 (1981) (Legislature allowed adjoining landowners to be parties "to increase participation in permit application hearings").

We do not have to decide whether it would be proper to consider Shrewsbury a statutory party in every Killington permit case. This case involved the impact of a development on an area directly adjacent to Shrewsbury. At least at the outset of the Board proceeding, one important issue was whether the proposed pond had to be viewed as a part of a larger development that included new ski trails in Parker's Gore East, adjacent to Shrewsbury. Criterion 8(A) requires the Board to look at alternative sites owned or controlled by Killington that may accomplish the same purpose. Any of the land owned or controlled by Killington might be involved in this evaluation, and alternative sites might have a direct impact on Shrewsbury. These factors strongly support the Board's decision.

Second, Shrewsbury could have been admitted as a permitted party. The Board could have based admission on a finding that the proposed development "may affect [Shrewsbury's] . . . interests under any of the provisions of section 6086(a)" or that Shrewsbury's participation will "materially assist the board or commission by providing testimony, cross-examining witnesses, and/or offering other evidence relevant to the provisions of section 6086(a)." There is no doubt that Shrewsbury's participation has met these standards. In fact, the Board's final decision in the proceeding is largely based on the impact of the pond construction on the wetland habitat, and this issue was introduced by Shrewsbury. We would be reluctant to reverse the Board on the grounds that it erroneously admitted a munic-

ipality as a mandatory party where the municipality so obviously meets the standards for permissive intervention.

Next, Killington claims that the Board erred in ruling that the issue of whether the development would destroy wetlands necessary to the survival of the bear population in Parker's Gore East was within the scope of the appeal. Killington argues that because the issue was not part of the Commission proceeding, and as a result was not included in its notice of appeal or the appeal of any other party, the Board had no authority to consider it. Killington relies on Environmental Board Rule 40(C), which states that the scope of the appeal is limited to "those reasons assigned by the appellant why the commission was in error unless substantial inequity or injustice would result from such limitation."[3]

We can dispose of Killington's claim summarily. The Board's conclusions rest on the effect the pond development would have on the bears' use of the beech trees for food and the tract of spruce and fir for travel, as well as on the loss of wetlands. If we uphold the Board's conclusions with respect to its other habitat findings, we do not have to reach the wetlands issue. We address the merits, however, because we find it appropriate to affirm the Board's conclusion that, based on its findings with respect to the wetlands, necessary wildlife habitat will be destroyed or significantly imperiled.

■ When we reach the merits, we find no error. On appeal from a district commission, the Board must "hold a de novo hearing on all findings requested by any party." 10 V.S.A. § 6089(a). In a de novo proceeding, the Board is required to hear the matter as if there had been no prior proceedings in the district commission. See *In re Green Peak Estates*, 154 Vt. 363, 372, 577 A.2d 676, 681 (1990). For the Board to approve the Killington permit application, it was required to make affirmative findings on all Act 250 criteria before it. See *Denio*, 158 Vt. at 237, 608 A.2d at 1170–71. Thus, once the Commission denied the permit for the pond under criterion 8(A) and Killington appealed its ruling, the Board was required to conduct a thorough review of that decision and, in order to issue the permit, find that Killington met the requirements of the statute.

---

[3] The provision on which Killington relies is now found in Rule 40(D).

As we have noted in other contexts, there are tensions inherent in a system of de novo appeal. See *In re Maple Tree Place*, 156 Vt. 494, 499–500, 594 A.2d 404, 407 (1991). By its rule, the Board has attempted to avoid unnecessary relitigation by attempting to narrow the issues before it. There must be a limit to the restriction imposed by the rule. A new round of evidence before the Board will inevitably shape the case somewhat differently from the way it appeared in the district commission. The Board must be free to make common-sense rulings within the general scope of the notice of appeal. Here, the notice of appeal generally attacked the Commission's "findings and conclusions that the project would significantly impair necessary wildlife habitat, would not utilize all feasible and reasonable means of lessening the alleged impairment, and would be a detriment to the public's general welfare."[4] There is no compelling indication of error by the Board in considering the effect of the loss of the wetlands in its criterion 8(A) review.

Killington's third claim of error is that the Board misapprehended the meaning of 10 V.S.A. § 6086(8)(A), which requires the denial of a permit if a proposed project "will destroy or significantly imperil necessary wildlife habitat or any endangered species." Before the Board, Killington argued that the statute must be read to allow denial only when the existence of a particular wildlife species is threatened by the proposed project. Thus, Killington contended that the Board could not deny the permit under criterion 8(A) because only the population of black bears which lived in or utilized Parker's Gore East would be affected by the pond construction, and the existence of black bears elsewhere in the state would be unaffected. The Board ruled, as it had in previous decisions, that the destruction or

---

[4] We are not persuaded that the wetlands issue should be excluded because it was not specifically mentioned in the notice of appeal and was not the subject of a cross-appeal. In fact, the issue had never arisen in the District Commission proceedings and, therefore, was not covered in the findings. We assume a notice of appeal will always be drafted only to attack the specific findings that an appellant seeks to challenge and not to raise new issues. No other party can cross-appeal with respect to issues that have never been raised in the district commission. Killington's position would mean that new issues could never be raised in the Board even if directly related to the criterion on appeal. We think this position goes too far.

significant imperilment of the habitat of a population of wildlife triggered criterion 8(A) review, irrespective of whether the species as a whole was threatened with extinction in the state. Since the Board's decision in the instant case, we have unanimously affirmed the Board's view in a case in which precisely this issue was presented. *In re Southview Associates*, 153 Vt. at 175–76, 569 A.2d at 503. Killington asks that we overrule that decision. We see no reason to do so.

*In Southview*, we upheld the Board's denial of a permit for a development that would have threatened the habitat of a population of approximately twenty deer. We said that "a 'necessary wildlife habitat' under Act 250 is one that is decisive to the survival of the population of a particular species that depends upon the habitat." *Id.* at 176, 569 A.2d at 503. We are bound by *Southview* as a matter of stare decisis. See *Young v. Northern Terminals, Inc.*, 130 Vt. 258, 261, 290 A.2d 186, 188 (1972) (judicial decisions that decide questions of law are governing precedents). Our adherence to precedent is reinforced by the fact that the Legislature has met twice since the *Southview* decision and has not amended the statute in response to that decision.

With one exception, the arguments Killington makes for a different construction of criterion 8(A) were considered and rejected in *Southview*. The exception is the legislative history Killington details in support of its position. Although legislative history is helpful in construing a statute where it clearly shows the intent of the legislature, see *Harris v. Town of Waltham*, 158 Vt. 477, 481, 613 A.2d 696, 698 (1992), the drafting history on which Killington relies is at best inconclusive. It does not persuade us to overrule *Southview*.

■ Finally, Killington claims that the Board's findings do not support its conclusions that Parker's Gore East contains necessary black bear habitat and that such a habitat would be destroyed or significantly imperiled by the pond construction and operation. We note that Killington does not assert that the findings themselves are unsupported by substantial evidence, and so the only issue is whether they support the Board's conclusions. See *Southview*, 153 Vt. at 178, 569 A.2d at 504.

Killington's attack on the Board's conclusion that the wetlands and the beech trees are necessary bear habitat is based on the absence of a finding that all the bears in Parker's Gore

East would die without this habitat. A similar claim was made in *Southview*. Our response in that case is equally applicable here:

> Southview appears to argue that because the evidence did not prove that all the deer would perish if the project were completed, the project's opponents failed to prove that the deeryard was "necessary wildlife habitat." This argument again misconstrues the terms of the statute. A concentrated, identifiable deeryard is "necessary wildlife habitat" if it is decisive to the survival of the white-tailed deer that use it during the winter—that is, if the deer require that sort of habitat to survive the winter. Of course, many of the individual animals might survive in another deeryard elsewhere in the state if the project were built; that fact does not render the area to be developed unnecessary to their survival in the sense contemplated by the Act.

*Id.* at 177 n.3, 569 A.2d at 504 n.3.

Based on this understanding of the statute, the findings are ample to support the Board's conclusion on necessary wildlife habitat. The Board detailed the importance of the wetlands as a source of food for the bears when they emerge from hibernation in the spring. It concluded that because the bears "are dependent upon wetlands for their spring food supply" and there are no other wetlands in Parker's Gore East, the wetland at the pond site was necessary bear habitat. Similar analysis was used with respect to the beech trees.

Killington makes a related argument that the findings are inadequate to support the conclusion that the construction and operation of the pond will destroy or significantly imperil necessary wildlife habitat. There is no question that the construction of the pond would eliminate or virtually eliminate the wetland. The findings support the conclusion.

*Affirmed.*