## In re MBL ASSOCIATES

[693 A.2d 698]

No. 96-110

March 6, 1997. The Town of Shelburne Selectboard and the Shelburne Planning Commission (Town) appeal the order of the Environmental Board granting developer MBL Associates (MBL) an Act 250 permit to construct a 221-unit housing project in South Burlington. The Town argues the Board erred in concluding that the project conforms with the Chittenden County Regional Plan, as required under Act 250. We affirm.

In January 1994, MBL filed an application for an Act 250 permit with the District Environmental Commission to build a housing development in South Burlington near the Shelburne town line. The development would be located on a 202-acre tract of land — 154 acres on the west side of Dorset Street and 48 acres on the east side of Dorset Street. All of the development, 161 single-family homes and 60 multifamily homes, would be built on 75 acres of the 154-acre tract, leaving the remaining 79 acres of the western tract and the entire 48-acre eastern tract undeveloped. Municipal water and sewer lines for the project would be substantially extended south along Dorset Street to serve the project. The Commission denied MBL a permit in April 1994. MBL appealed to the Environmental Board, which, following motions to alter an initial permit, granted the developer an Act 250 permit in January 1996. This appeal followed.

Before a land-use permit may be issued under Act 250, the Board or district commission must find that the project conforms with ten statutory criteria. 10

V.S.A. § 6086(a). The tenth criterion requires a project to be "in conformance with any duly adopted local or regional plan." *Id.* § 6086(a)(10). The Town does not contest the Board's findings relative to criterion 10. Rather, the Town contends solely that the Board erred in concluding that the project conforms with the Chittenden County Regional Plan. We will affirm the Board's conclusions if they are rationally derived from the findings and based on a correct interpretation of the law. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992).

The Board supported its conclusion on three grounds: (1) that the project is an allowed use under the regional plan, (2) that none of the provisions in the regional plan calling for development in "growth centers," which encourage traditional village-town-country settlement patterns, are specific enough to deny MBL's permit, and (3) that the project complies with the plan under its "greater public good" exception. The Town does not contest the Board's first determination that the project is an allowed use under the regional plan. Although the area where the project would be located is designated as an agricultural area, the plan specifically includes "residential" as an allowed use in agricultural areas.

The Town does contest the Board's second determination. The Town argues that the Board should not have looked to the municipal zoning bylaws to determine whether the project satisfied the regional plan's density restrictions unless the Board found the regional plan's density requirements ambiguous. We disagree. The regional plan states that the intensity, type, and location of the region's future development are depicted on the Future Land Use Map and the Future Land Use Matrix, which take into consideration, among other factors, "the growth center concept." Under "recommended residential density" for agricultural areas, the matrix indicates one unit per ten acres with clustering "or per local by-

laws." The Board therefore looked to South Burlington's zoning bylaws, which allow a maximum residential density of 1.1 units per acre. As the project's overall density met this requirement, the Board concluded that the project was not prohibited under the plan.

Provisions of a regional plan, like zoning ordinances, should be construed according to the ordinary rules of statutory construction. See *Houston v. Town of Waitsfield*, 162 Vt. 476, 479, 648 A.2d 864, 865 (1994). If the meaning of the plan is clear, it must be followed according to its express terms. *Id.* A project in an agricultural area conforms with this regional plan as long as it does not exceed the listed density of one unit per ten acres *or* the density prescribed in the applicable local bylaws. This language is clear and unqualified, and creates no ambiguity. Cf. *In re Molgano*, 163 Vt. 25, 30-31, 653 A.2d 772, 775 (1994) (if town plan is ambiguous, zoning bylaws determine conformance with plan). All parties agree that the overall project density meets the South Burlington zoning requirement.

The Town contends, however, that the sheer size of the development (221 units) triggers its designation as having a "substantial regional impact" under the plan, thereby altering otherwise-stated density limitations and requiring that it be located in a designated growth center. Looking to the regional plan, we agree that the project qualifies as having a substantial regional impact because it occurs outside a designated growth center and requires an Act 250 permit. But the plan's purpose for the substantial-regional-impact criteria "is to determine the applicability (or not) of the Regional Plan in state regulatory proceedings, primarily Act 250 and Section 248." We see nothing in the regional plan's provisions concerning substantial regional impacts that alters the plan's density limitations.

The Town also contests the Board's conclusion that the regional plan is not specific enough to deny the project because nowhere in the plan is there a clear restriction such as a numeric limit on housing densities above a certain level outside the designated growth centers. The Town complains that the Board is inconsistent in that it has found other regional plans sufficiently specific to deny permits even though those plans did not contain numeric restrictions. We decline to engage in comparing the Board's interpretations of various regional plans. The Board's decisions as to matters within its jurisdiction are treated with great deference. *In re Killington, Ltd.*, 159 Vt. at 210, 616 A.2d at 244. Upon reviewing the Board's findings and the applicable provisions of the plan, we agree that the project meets the density requirements under the zoning bylaws as allowed in the plan, that no other provision requires modification of this density, and that provisions directing development to growth centers are phrased in advisory, not mandatory, terms. This is sufficient to uphold the Board's conclusion that nothing in the regional plan required denying MBL a permit.

Nevertheless, the Town asserts that the Board erred in interpreting the provisions relevant to growth centers as advisory only. It contends the Board wrongfully construed provisions phrased in terms of "should" as recommended, not mandatory, thus allowing the Board to conclude that the plan's provisions directing development to growth centers were ambiguous and lacked the specificity required to deny an Act 250 permit. The Town cites our decision in *In re Green Peak Estates*, 154 Vt. 363, 368-69, 577 A.2d 676, 679 (1990), where we noted that a provision in the regional plan stating that residential development "should" not be permitted on slopes greater than twenty percent was a specific policy requirement. There is, however, no indication in *Green Peak Estates* whether "should" was defined in the applicable

regional plan or that the interpretation of "should" as permissive or mandatory was even at issue. Here, the Board noted that the regional plan expressly defined "should" as "identifying that a requirement is encouraged but not mandated." In addition, the Board considered, and rejected, arguments that the plan's definition of "should" ought to be interpreted as setting mandatory requirements. The Board thus concluded that none of the regional plan's provisions calling for residential development within growth centers clearly prohibit residential development outside such centers as long as the development meets the plan's density requirements. We agree with this conclusion.

In light of our decision, we need not address the Town's challenge to the Board's alternative conclusion that the project complies with the plan under its "greater public good" exception.

*Affirmed.*