## STATE OF VERMONT
## SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| **In re Barefoot & Zweig Act 250 Application** | } | Docket No. 46-4-12 Vtec |

### Decision on Motion for Party Status

Now before us is a motion for party status by Interested Person Francis Kincaid Perot ("Ms. Perot") to participate in an appeal brought by proponents of a project on land adjacent to land belonging to Ms. Perot. On December 30, 2011, the District 5 Environmental Commission ("the District Commission") denied an Act 250 permit application by Applicants Tom Barefoot III, Joni Zweig, and True North Wilderness Programs, LLC ("Applicants") to operate a wilderness therapy program on a 25-acre tract owned by Mr. Barefoot and Ms. Zweig off Dana Hill Road in the Town of Waitsfield, Vermont. In the District Commission proceeding, Ms. Perot sought party status under 10 V.S.A. § 6805(c)(1)(E) as an "adjoining property owner or other person who has a particularized interest protected by [Act 250] that may be affected by an act or decision by a district commission." She participated in the proceedings, and the District Commission granted her final party status under Act 250 Criteria 4 and 10 but denied her party status under Criteria 1, 1(A), 1(B), 1(E), 2, 3, 5, 8, 8(A), and 9(K).

Applicants appealed the District Commission's decision on April 2, 2012, and Ms. Perot cross-appealed on May 4, 2012. On May 24, 2012, Ms. Perot filed a motion for party status under Criteria 4 and 10 as well as under Criteria 1, 1(A), 1(B), 1(E), 2, 3, 5, 8, 8(A), and 9(K). She did so simultaneously with a statement of 27 questions encompassing both preliminary questions of party status and substantive questions related to her cross-appeal. On July 2, 2012, Applicants moved to dismiss all of Ms. Perot's questions. Several rounds of responses and replies ensued.[1]

### Factual Background

In order to put the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

---

[1] Response filed on 7/31/12 by Ms. Perot; Reply to Response filed on 8/22/12 by Applicants; Response to Reply to Response filed 9/25/12 by Ms. Perot; and Reply to Response to Reply to Response filed 10/15/12 by Applicants.

1.  Applicants seek an Act 250 permit to operate a wilderness therapy program on a 25-acre tract of otherwise undeveloped land owned by Mr. Barefoot and Ms. Zweig off Dana Hill Road in the Town of Waitsfield, Vermont. Users of the proposed wilderness therapy program include up to 24 adolescents with behavioral issues, supervised by up to 15 on-site adult field guides.

2.  Applicants will use the site, along with adjacent state forested lands, for activities such as hiking and camping. In the winter, groups may camp on-site continuously, while during the other three seasons they will camp on-site one to three days per week. During the summer and fall seasons, "graduation" ceremonies may occur on-site every other week.

3.  The application at issue in this appeal does not include a retreat center, which Applicants had proposed in the past, but have now chosen to remove from their proposed plans.

4.  Ms. Perot owns property adjacent to Applicants' 25-acre tract. She accesses her property via Dana Hill Road (a Class 4 town road or town trail) and a right-of-way over Applicants' land. Dana Hill Road also provides the only vehicular access to the project site.

5.  Applicants note in their application that they anticipate 10 or fewer round trip vehicle trips per week.

6.  The project includes two campsites identified as the "Creekside" and "Upper" sites.

7.  Applicants seek approval for five as-built structures: two tent platforms, two composting toilets, and one 20' diameter yome.[2]

8.  Applicants also propose two new site improvements: a third, composting vault toilet and a drilled well and associated storage tank and piping, powered by a photovoltaic pump. Drinking water is currently carried in from off-site, but Applicants believe that the new well, having an anticipated yield of 1 gallon per minute, and storage tank will meet the drinking water needs of the project.

9.  The as-built toilets are constructed of wood and cement and are located 98 and 77 feet from Ms. Perot's property line. The existing Creekside toilet is located 135 feet from an unnamed stream that forms a portion of the boundary line between Applicants' and Ms. Perot's parcels. The proposed third toilet would be located near the Upper campsite.

---

[2] The Court understands that a yome is a yurt-like structure, sometimes made of cloth and shaped in part like a geodesic dome. Applicants describe a yome as a "round tent structure" in Question 1 of their Statement of Questions, filed April 23, 2012.

10.    Applicants obtained municipal approval from the Town of Waitsfield Development Review Board ("DRB") for their as-built structures on December 20, 2010.  The DRB approval did not include the proposed new well.  It also did not include the additional composting toilet, although the DRB noted that, should Applicants desire in the future to install a third composting toilet of similar size and design to the first two, the Zoning Administrator could review that change without the need for additional conditional use review.

11.    Applicants' Act 250 permit application lists the project as being in a headwaters area.

12.    Applicants hold several waste water permits: Waste Water Permit Nos. WW-5-5562 (Sept. 13, 2010), WW 5-5562-R (Nov. 15, 2010), and WW-5-5562-1 "Corrected Permit." (Feb. 11, 2011).  The latter states, "The 3 composting toilets are permitted for a maximum of 10 persons per toilet per day with a total maximum of 20 persons per day for the project."

13.    Applicants propose to have up to 24 students per day onsite, up to 15 staff persons during the day and 8 staff persons overnight.

### Discussion

Here, we consider Ms. Perot's motion for party status and Applicants' motion to dismiss those of Ms. Perot's Statement of Questions relating to her requests for party status.[3]  Party status before this Court is a preliminary issue of standing that we determine under express procedural standards.  Applicants' motion to dismiss Ms. Perot's requests for party status under these criteria argues, in part, that "Ms. Perot is precluded from litigating such claims and issues because she raised them or could have raised them in the Waitsfield [Development Review Board] proceedings."  (Applicants' Objection to Perot's Mot. for Party Status at 1, filed July 2,

---

[3]  A statement of questions generally encompasses questions posed by an appellant that are to be answered on the merits of the appeal, while a request for party status is often made by an individual, not necessarily an appellant, who requests permission to participate in an appeal brought by another party. Here, however, Ms. Perot appears before us in two capacities: that of a cross appellant, who has raised legal challenges under certain criteria and, second, an individual who seeks party status that was denied her by the District Commission.  Compare Questions 23 and 26 with Questions 1–10 from Cross-Appellant Perot's Statement of Questions, filed May 24, 2012.

Ms. Perot's Questions 11 through 20 also ask whether, if she is afforded party status under the criteria denied her by the District Commission, Applicant's project conforms to those criteria.  Id.  Thus, we understand that by her multi-faceted Statement of Questions, Mr. Perot seeks both party status and, if granted party status, the appellate right to challenge the proposed project's conformance to Act 250 Criteria 1, 1(A), 1(B), 1(E) 2, 3, 4, 5, 8, 8(A), 9(K), and 10.

Procedurally, Applicants' motion to dismiss those of Ms. Perot's Questions that relate to her requests for party status is akin to an opposition to her motion for party status.  Statutory standards govern our review of an opposition to a motion for party status.  See 10 V.S.A. § 8504; V.R.E.C.P. § 5(d)(2).

3

2012.) Preclusion, however, is an affirmative defense. See V.R.C.P. 8(c). The question of whether preclusion applies to particular claims that a party makes when she comes before us is distinct from the preliminary matter of party status. We therefore focus on whether Mr. Perot satisfies the procedural requirements for her to have party status under specific Act 250 criteria. We reject Applicants' argument that the doctrine of issue preclusion forecloses Mr. Perot's right to seek party status under those claims.

## I.    Ms. Perot has automatic party status under Criteria 4 and 10.

When a person wishes to appeal from an Act 250 district commission decision, 10 V.S.A. § 8504 and V.R.E.C.P. § 5(d)(2) govern that appellant's party status claims and challenges. The latter grants automatic party status before our Court to an aggrieved person who (1) was granted party status by the district commission pursuant to 10 V.S.A. § 6085(c)(1)(E); (2) participated in the proceedings before the district commission; and (3) retained party status at the end of the district commission proceedings. 10 V.S.A. §§ 8504(a) & (d)(1). The appellant's participation before the Environmental Division is also limited to issues under those criteria for which the district commission granted the person party status. V.R.E.C.P. § 5(d)(2).

Ms. Perot claims party status as an aggrieved person under 10 V.S.A. § 8504(a). She was granted party status by the Commission pursuant to 10 V.S.A. § 6085(c)(1)(E) under Criteria 4 and 10, participated in the Commission's proceedings under those criteria, and retained final party status as to Criteria 4 and 10. Ms. Perot therefore had standing to file her cross-appeal and has automatic party status under V.R.E.C.P. § 5(d)(2) under those criteria. Applicants have not presented sufficient reasons for this Court to now revoke Ms. Perot's party status under those criteria. See V.R. E.C.P 5(d)(2). Thus, we acknowledge her party status under Criteria 4 and 10.

## II.    Ms. Perot's status under Criteria 1, 1(A), 1(B), 1(E), 2, 3, 5, 8, 8(A), and 9(K).

Notwithstanding the restrictions in 10 V.S.A. § 8504(d)(1)—that is, even when a person participated but failed to retain party status for particular criteria at the end of the proceeding— an aggrieved person may appeal an act or decision of the district commission under those criteria if this Court determines that one of three statutory circumstances exist, including that "the decision being appealed is the grant or denial of party status." 10 V.S.A. § 8504(d)(2)(B). Persons bringing a claim under 10 V.S.A. § 8504(d)(2) "must assert that claim by motion filed with the[ir] notice of appeal." V.R.E.C.P. 5(d)(2).

Here, one of the decisions being appealed is the District Commission's denial of Ms. Perot's claims of party status under Criteria 1, 1(A), 1(B), 1(E), 2, 3, 5, 8, 8(A), and 9(K). Ms. Perot has now re-asserted those party status claims by her motion with this Court. Thus, we are presented with the legal question of whether Ms. Perot meets 10 V.S.A. § 6085(c)(1)(E), i.e., whether she is an adjoining property owner with a particularized interest protected by Act 250 who could be affected by a determination on Applicants' permit application under the contested criteria. The fact that Ms. Perot is an adjoining property owner is not in dispute; her parcel shares a boundary with the property at issue in the pending application. Thus, our analysis focuses on whether she meets her burden on the remainder of the statutory test. For each Act 250 criteria under which she now seeks party status, she must demonstrate (1) that she has a particularized interest; (2) that the interest is protected by one of the criteria being analyzed; and (3) that there is a "reasonable possibility" that our decision on the application may affect her interest. See In re Granville Mfg. Co., No. 2-1-11 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 1, 2011) (Durkin, J.).

The interest protected by one of the Act 250 criteria must be particularized; general policy concerns shared with the general public are not a sufficient basis for individual party status. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (in federal cases, a plaintiff must allege a "concrete and particularized" injury to have standing); Hinesburg Sand & Gravel Co. v. State, 166 Vt. 337, 341 (1997) (adopting the federal standing requirements).

Finally, the litigant must demonstrate a causal link between a decision on a proposed project and an alleged harm to his or her particularized interests that may be protected under a specified criterion. See Granville, No. 2-1-11 Vtec, slip op. at 6. While a sufficient showing cannot be purely speculative, a litigant seeking party status need simply meet a minimum factual threshold to satisfy its showing requirement. See In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.) (litigants seeking party status "must at least state [that] their fears and concerns have some factual basis and are not based solely on speculation"); In re Bennington Wal-Mart Demolition/Construction Permit, No. 143-7-09 Vtec, slip op. at 10, n. 5 (Vt. Super. Ct. Envtl. Div. Apr. 24, 2012) (Walsh, J.) (stating that "the standard for obtaining party status under Act 250 is a showing of a reasonable possibility that a decision

5

on the proposed project <u>may</u> affect a person's particularized interest") (emphasis added).  An adequate threshold showing must describe the evidence or testimony to be introduced at the merits hearing and must be sufficiently concrete for the Court to understand the materiality of the evidence or testimony.  <u>Id</u>. at 8–9 (internal quotation omitted).  We emphasize, however, that when the pending legal issue is limited to a party status claim, the claimant need only show that the impact <u>may</u> occur; whether it <u>will</u> occur is a matter to be addressed at a merits hearing.

With these standards in mind, we review Ms. Perot's claim for party status under Criteria 1, 1(A), 1(B), 1(E), 2, 3, 5, 8, 8(A), and 9(K).

### A.  Criteria 1, 1(A), and 1(B)

Criterion 1 requires a determination of whether an applicant has shown that his or her proposed development "[w]ill not result in undue water or air pollution."  10 V.S.A. § 6086(a)(1).  To determine compliance with Criterion 1, a reviewing body must at least consider

> the elevation of land above sea level; and in relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal [for the project]; the slope of the land and its effect on effluents; the availability of streams for disposal of effluents; and the applicable health and environmental conservation department regulations.

10 V.S.A. § 6086(a)(1).

Criterion 1(A), concerning impact upon headwaters, requires applicants to show that a development "will meet any applicable health and environmental conservation department regulation regarding reduction of the quality of the ground or surface waters flowing through or upon lands which are not devoted to intensive development and which lands are:

> (i)     headwaters of watersheds characterized by steep slopes and shallow soils; or
> (ii)    drainage areas of 20 square miles or less; or
> (iii)   above 1,500 feet elevation; or
> (iv)   watersheds of public water supplies designated by the agency of natural resources; or
> (v)    areas supplying significant amounts of recharge waters to aquifers.

10 V.S.A. § 1(a)(1)(A).

Criterion 1(B) requires an applicant to demonstrate that the proposed development "will meet any applicable health and environmental conservation department regulation regarding

6

the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B).

The particularized interests that Ms. Perot alleges are protected by Criteria 1, 1(A), and 1(B) are her interests in ensuring that Applicants' adjacent project complies with health and environmental conservation department regulations regarding waste disposal, so as to prevent the pollution of her own land and water by untreated human effluent. She additionally alleges that such pollution could jeopardize her ability to maintain water quality on her land in compliance with the Vermont Family Forest Program. These are not general policy concerns shared with the general public; rather, they are interests particular to Ms. Perot under these criteria.

Ms. Perot alleges a reasonable possibility that a decision on these criteria could affect her particularized interests. She states that her adjoining property is "down-slope" from the project and that harmful substances could migrate onto her property or into her wells if the project does not meet health and environmental standards or if it involves the injection of waste materials or harmful or toxic substances into ground water or wells. (Ms. Perot's Mot. for Party Status at 13, filed May 24, 2012.) Specific to her protected interests under Criterion 1(A), Ms. Perot alleges that both her property and Applicants' property are located in a headwaters area and that slopes in the vicinity of one of the project's vault toilets exceed 30%. (Ms. Perot's Mot. for Party Status at 16, filed May 24, 2012). More generally, she alleges that the project's vault toilets lie close to her property but could be re-located with a greater buffer zone. Id. at 15. She also claims that pollution at the Creekside site could imperil her ability to maintain stewardship of her land as the Vermont Family Forest Program requires her to do. Id. at 18. In support of her assertions, Ms. Perot submitted orthophotos (although these do not show the locations of the campsites or to the proposed or existing vault toilets) as well as photos purporting to depict views of the project from Ms. Perot's property. (Exhibits P-1 – P-17; see also Ms. Perot's Mot. for Party Status at 9–10, filed May 24, 2012). Applicants' application includes a site plan dated April 28, 2011 that we understand to depict the as-built toilets as being located 98 and 77 feet from Ms. Perot's property line. The existing Creekside toilet appears to be located 135 feet from an unnamed stream that forms a portion of the boundary line between Applicants' and Ms. Perot's parcels. The proposed third toilet would be located near the Upper campsite.

7

Applicants claim that the location of their composting toilets precludes the possibility of any impact on the water sources that Ms. Perot fears could be contaminated. (Applicants' Objection to Perot's Mot. for Party Status at 9, filed Jul. 2, 2012.) They contend that two of these toilets operate under a prior permit from the Vermont Department of Environmental Conservation and are subject to routine maintenance, and thus any harm from the project is merely speculative. Id. However, Ms. Perot alleges that a permit violation is likely because the number of people that Applicants propose will use the site exceeds the number of people allowed in the wastewater permit. (Ms. Perot's Resp. to True North's Aug. 22, 2012 filing at 3, filed Sept. 25, 2012.)

In seeking party status, a litigant need only demonstrate that a decision on a proposed project may harm his or her particularized interests. See Bennington Wal-Mart, No. 158-10-11, slip op. at 9 (internal citations omitted). Ms. Perot has shown a reasonable possibility that a decision on the proposed project may affect her particularized interest in avoiding the migration of pollution onto her land and in assuring that the project complies with relevant regulations related to water and waste. We conclude that Ms. Perot has met her threshold showing requirement by including photographs, maps, an affidavit by a professional engineer, and by pointing to the absence of a wastewater permit that covers the maximum per-day number of users that Applicants propose to use the land. We therefore **GRANT** her motion for party status on Criteria 1, 1(A), and 1(B).

**B. Criterion 1(E)**

Criterion 1(E) requires an applicant to demonstrate that the proposed development "of lands on or adjacent to the banks of a stream will, whenever feasible, maintain the natural condition of the stream, and will not endanger the health, safety, or welfare of the public or of adjoining landowners." 10 V.S.A. § 6086(a)(1)(E).

The particularized interest protected by Criterion 1(E) that Ms. Perot alleges may be impacted is her interest in maintaining the natural condition of a stream running across her property that she regularly walks along, observes, and maintains for the use of wildlife. This is a particularized interested protect by Criterion 1(E).

Ms. Perot alleges a reasonable possibility that a decision on this criterion could affect her particularized interests. She alleges that stormwater and sediment from the Creekside campsite could degrade the stream due to its location; indeed, she alleges that Applicants' use of the site

has already caused erosion on Ms. Perot's property. (Ms. Perot's Mot. for Party Status at 18, filed May 24, 2012); see also (Aff. of Juila S. Moore, P.E. at 4, filed Sept. 25, 2012.) Based upon these representations, we **GRANT** Ms. Perot's motion for party status on Criterion 1(E).

### C. Criterion 2

Criterion 2, in pertinent part, requires the district commission to find that the proposed development has "sufficient water available for the reasonably foreseeable needs of the . . . development." 10 V.S.A. § 6086(a)(2).

The interest that Ms. Perot alleges is in having sufficient water for her own needs. Criterion 2 does not protect this interest directly; it merely specifies that the development should have sufficient water available for the development's needs. Ms. Perot does not allege that the project will not have enough water for its needs, and the question of whether the project's water usage could deprive Ms. Perot of her access to water is more properly addressed under Criterion 3, as explained below. As Ms. Perot fails to allege a particularized interest protected under Criterion 2, we **DENY** her motion for party status on Criterion 2.

### D. Criterion 3

Criterion 3 requires the district commission to find that the proposed development "[w]ill not cause an unreasonable burden on an existing water supply, if one is to be utilized." 10 V.S.A. § 6086(a)(3). Criterion 3 is concerned with "impacts on the ability to meet demand of neighboring wells or water sources if those other wells or water sources share the same basic source of water." Re: MBL Assocs., No. 4C0948-EB (Altered), Findings of Fact, Conclusions of Law, and Order, at 28 (Vt. Envtl. Bd. May 2, 1995). Criterion 3 does not govern possible contamination of existing water supplies. In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7.

Ms. Perot alleges an interest in having sufficient clean water for her own needs from "a spring reservoir located on the 25-acre Project tract which feeds her camp via a spring line." (Ms. Perot's Mot. for Party Status at 19, filed May 24, 2012.) She alleges that Applicants' proposed drilled well could affect her water supply "if the spring line is broken,[4] or there is contamination from the leach field." Id. She also claims that Applicants have failed to demonstrate that their project will not affect her water supply. Id.

---

[4] She states that the line is currently broken and she obtains water through other temporary means. (Ms. Perot's Mot. for Party Status at 19, filed May 24, 2012.)

To the extent that Ms. Perot claims to have an interest based on potential contamination, Criterion 3—with its focus on water quantity, not quality—does not cover that interest. Ms. Perot does have a particularized interest under Criterion 3 in ensuring that Applicants' use will not deplete the shared reservoir to the extent that she can no longer obtain water for her needs.

However, Ms. Perot fails to allege a reasonable possibility that the quantity of water Applicants will use (1 gpm, according to their application) would affect her interest. It is not enough to allege that Applicants have failed to show that their proposal will not affect her water supply; to obtain party status, the burden is on Ms. Perot to show at least a reasonable possibility that the project will affect her interest. See In re Bennington Wal-Mart Demolition/Construction Permit, No. 143-7-09 Vtec, slip op. at 8–9 (stating that an adequate threshold showing must describe the evidence or testimony to be introduced at the merits hearing and must be sufficiently concrete for the Court to understand the materiality of the evidence or testimony). An individual seeking party status must offer "some factual basis" for the Court to rely upon "that their fears and concerns [about a proposed project] have some factual basis and are not based solely on speculation." In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.). Because Ms. Perot fails to make a minimal factual showing that a decision on the project will jeopardize her interest in having enough water to meet her needs, we **DENY** her motion for party status under Criterion 3.

### E. Criteria 5 and 9(K).

Criterion 5, in pertinent part, requires the district commission to find that the proposed development "[w]ill not cause unreasonable congestion or unsafe conditions with respect to use of the highways . . . and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5).

Criterion 9(K), in pertinent part, directs the district commission to grant a permit for a development on or adjacent to public lands upon a demonstration that the development "will not unnecessarily or unreasonably endanger the public or quasi-public investment" in the lands or "materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to" the lands. This criterion "seeks to protect state and local governments from adverse fiscal impacts on public facilities and investments that are adjacent to the proposed project." In re St. Albans Grp. & Wal-Mart Stores, Inc., No. 6F0471-EB, Mem. of Decision, at 9 (Vt. Envtl. Bd. Apr. 15, 1994).

The particularized interest protected by Criteria 5 and 9(K) that Ms. Perot alleges concerns Dana Hill Road, which the Town of Waitsfield classifies as Class 4-B town road. Insofar as she regularly uses Dana Hill road and accesses her property through it, she has a particularized interest under these criteria distinguishable from that of the general public.

Ms. Perot fails to allege, however, a reasonable possibility that a decision on this criterion could affect her interests under Criteria 5 and 9(K). Ms. Perot merely states her fears that the increased traffic due to the project could cause unsafe road conditions including "washouts, rutted road surface, damage to water bars and proper drainage or erosion of the road surface." (Ms. Perot's Mot. for Party Status at 21, filed May 24, 2012.) She provides no factual basis for these fears, nor does she describe sufficiently concrete evidence or testimony to be introduced at the merits hearing. Similarly, she fails to show a reasonable possibility that the 10 or fewer round trips per week that Applicants' application estimates that the project will generate would "materially jeopardize or interfere with the function, efficiency, or safety of, or the public's use or enjoyment of or access to" the road under Criterion 9(K). Neither under Criterion 5 nor under Criterion 9(K) does Ms. Perot make a minimally adequate threshold showing of the possibility that Applicants' use of the road will degrade it.

Ms. Perot also fails to show a reasonable possibility that state or local governments would experience adverse fiscal impacts on this Class 4-B road under Criterion 9(K), particularly since the Town has discretion over maintenance expenditures on Class 4-B roads. Ms. Perot admits that the town "has no obligation to provide maintenance" for Class 4-B roads but may choose to do so. (Ms. Perot's Mot. for Party Status at 21-22, filed May 24, 2012.) She states that on one occasion a combination of money from local landowners, the town, the Vermont Agency of Natural Resources, and unspecified grants funded improvements totaling $13,688.[5] Id. She alleges that the increased traffic related to Applicants' project will jeopardize that particular investment and will necessitate future maintenance costs. Id. However, any fiscal impact on state or local governments on this Class 4-B road would be predicated on the town's choice to provide maintenance, repairs, or improvements, even though it has no obligation to do so. It would be mere speculation to assume that the state or local government

---

[5] Ms. Perot's contribution was $134; the Town contributed $1,000; and the ANR gave in-kind services worth $1,500.

would make such a choice if degradation did indeed occur. We therefore **DENY** Ms. Perot's motion for party status on Criteria 5 and 9(K).

### F. Criterion 8

Criterion 8 requires the district commission to find that the proposed development "[w]ill not have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites[,] or rare and irreplaceable natural areas." 10 V.S.A. § 6086(a)(8). "While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere aesthetic interests of the [neighbor], that will suffice [for granting party status]." Champlain Marina, No. 28-2-09 Vtec, slip op. at 6 (quoting Summers v. Earth Island Inst., 55 U.S. 488, 494 (2009)); see also Lujan, 504 U.S. at 562–63 ("The desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for purposes of standing."); Entergy Nuclear, No. 89-4-06 Vtec, slip op. at 8–9 (finding that allegations that a permit amendment would adversely affect fishing, boating, bird watching, and ecological activities were sufficiently specific "to establish threat of injury to individuals' particularized interests").

Ms. Perot alleges a particularized interest under Criterion 8 in preserving the scenic or natural beauty of her adjoining property and the forested land that surrounds it. (Ms. Perot's Mot. for Party Status at 23, filed May 24, 2012.) Ms. Perot alleges a reasonable possibility that a decision granting the permit allowing students and their supervisory staff to use this forested area could affect the aesthetics of the area. Indeed, Ms. Perot alleges that Applicants' current use of the property has already disturbed the peace and tranquility that she formerly enjoyed. (Ms. Perot's Mot. for Party Status at 24, filed May 24, 2012.) Of course, the ultimate burden of proof at trial with respect to Criterion 8 is on Ms. Perot to demonstrate an undue adverse effect. See In re Denio, 158 Vt. 230, 237 (1992); 10 V.S.A. § 6088(b). For the preliminary matter of standing, however, Ms. Perot's showing is adequate for us to **GRANT** her motion for party status under Criterion 8.

### G. Criterion 8(A)

Criterion 8(A) forbids the district commission from granting a permit if any party opposing the application demonstrates that the proposed development "[w]ill destroy or significantly imperil necessary wildlife habitat or any endangered species" and that party can additionally show that either (i) the public benefit does not outweigh the loss from the

destruction or imperilment of the habitat or species, (ii) the proponent of the project has not or will not apply all feasible and reasonable means of preventing or lessening the negative effects of the project or (iii) the applicant owns and could develop on a reasonable alternative site. 10 V.S.A. § 6086(a)(8)(A). "Necessary wildlife habitat" is defined at 10 V.S.A. § 6001(12) as a "concentrated habitat which is identifiable and is demonstrated as being decisive to the survival of a species of wildlife[6] at any period in its life including breeding and migratory periods."

The particularized interest protected by Criterion 8(A) that Ms. Perot alleges is her interest in observing and enjoying area wildlife on and near her property. Specifically, she seeks to preserve bird and other wildlife habitat in a stand of northern hardwoods. (Ms. Perot's Mot. for Summ. J. at 23, filed May 24, 2012.) She alleges that Applicants' use of the property by groups of students and staff would entail activities, traffic, and noise that would interfere with wildlife habitat and wildlife. With her request for party status, Ms. Perot includes a letter from a wildlife ecologist supporting her contentions and a photo purporting to depict bear claw marks on a red pine tree on Ms. Perot's property. (Exhibits P-19 and P-17 respectively, filed May 24, 2012.) In this preliminary party status determination, this constitutes a sufficient threshold showing of a reasonable possibility that a decision on this criterion could affect Ms. Perot's particularized interests; thus, we **GRANT** her motion for party status under Criterion 8(A).

## Conclusion

For the reasons stated above, we **GRANT** Ms. Perot's motion for party status as to Act 250 Criteria 1, 1(A), 1(B), 1(E), 4, 8, 8(A), and 10 and we **DENY** her motion for party status as to Act 250 Criteria 2, 3, 5, and 9(K). This decision answers Questions 1-10 and 21, 22, 24, and 25 in Ms. Perot's Statement of Questions (relating to her motion for party status), making Applicants' motion to dismiss Ms. Perot's Statement of Questions moot as to those questions. Furthermore, Ms. Perot's Questions 15, 16, 17, and 20 pose substantive questions on criteria for which we have determined that she lacks standing. As we are thus without jurisdiction to hear those questions, we **GRANT** Applicants' motion to dismiss Ms. Perot's Questions 15, 16, 17, and 20.

---

[6] The Vermont Supreme Court further clarified that a "necessary wildlife habitat" under Act 250 need merely be decisive to the survival of the population of the species using the habitat at issue, not necessarily to the survival of the entire population of the species within the state. In re Killington, Ltd., 159 Vt. 206, 216 (1992) (citing In re Southview Assocs., 153 Vt. 171, 177, (1989)).

In a subsequent opinion, we will address Applicants' motion to dismiss the remaining portions of Ms. Perot's Statement of Questions: Questions 11–14, 18, 19, 23, 26, and 27.

Done at Newfane, Vermont, this 13th day of March, 2013.

_____
Thomas S. Durkin, Environmental Judge